Maria **NOTARIAN** and Joseph Notarian, Libellants,

v.

**TRANS WORLD AIRLINES, INC.,**
Respondent.

No. 64–68.

United States District Court
W. D. Pennsylvania.

June 23, 1965.

P. J. McArdle, Pittsburgh, Pa., for plaintiff.

Bernard J. McAuley, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

This is here on the respondent's Motion To Dismiss. The libellants, Maria Notarian and Joseph Notarian, filed a complaint in Admiralty against the respondent, Trans World Airlines, Inc., and averred that the libellants, husband and wife, are citizens of the Commonwealth of Pennsylvania, United States of America; that the respondent is a citizen of the United States, but not of the Commonwealth of Pennsylvania; that jurisdiction is based on a maritime tort; that the wife-libellant purchased a round trip airline ticket in Pennsylvania from the respondent for the wife-libellant's transportation on the respondent's airline from Pittsburgh to Rome with a stopover in New York, and from Rome back to Pittsburgh with a stopover in New York; that in the course of the flight from Rome, Italy to New York City, the wife-libellant sustained personal injuries when the airplane jolted violently and threw her about as she was leaving the restroom on the airplane in an attempt to return to her seat; that these personal injuries were due to the negligence of the respondent in failing to provide the wife-libellant with a reasonably safe passage for various itemized reasons; and, that as a result of such injuries because of the respondent's negligence, the libellants were damaged.

The respondent's motion to dismiss is based upon two grounds: (1) that the aircraft in which the accident occurred made no contact with the water and is therefore not includable in admiralty, and (2) that this action is controlled by the provisions of the Warsaw Convention.

Although it is not averred, the alleged tort appears to have occurred over the Atlantic Ocean. The respondent argues that in all cases of admiralty dealing with airplane-injury cases, the tort does not occur until contact has been made with the water. It submits these as authority: Noel et al. v. Linea Aeropostal Venezolana, 247 F.2d 677, C.A.2, 1957, cert. denied 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (plaintiff's decedent died in a crash in the Atlantic Ocean thirty miles from the New Jersey shore); Trihey v. Transocean Air Lines, Inc., 255 F.2d 824, C.A.9, 1958 (plaintiff's decedent died in a crash in the Pacific Ocean); and Weinstein v. Eastern Air Lines, Inc., 316 F.2d 758, C.A.3, cert. denied 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed. 2d 271 (plaintiff's decedent was killed in a crash in Boston Harbor). While it is true that in the cited cases contact was made with the water, none of these cases hold that contact with the water is indispensable in an admiralty tort.

The following was said in a footnote in Wilson v. Transocean Airlines et al., 121 F.Supp. 85 (D.C.N.D.Cal., 1954) at page 91, footnote 23:

"At the beginning of the development of aviation in the United States there was considerable body of opinion that the entire ocean of air surrounding the earth is within the admiralty jurisdiction, and that consequently all air flight is within the admiralty and maritime jurisdiction of the federal government. This theory never received general acceptance and the federal legislation regulating air navigation has been based on the Commerce Clause of the Constitution. However, the question whether the airspace over the seas is within the jurisdiction of admiralty has received little attention and remains an open one. * * *"

In D'Aleman v. Pan American World Airways, 259 F.2d 493, C.A.2, 1958, the plaintiff's decedent made a claim under the Death on the High Seas Act when the airliner had to make an unscheduled stop because of mechanical difficulties. When this was announced to the passengers, the plaintiff's decedent became ill and later died at the destination. No crash was involved. In that case it was

held that the Death on the High Seas Act grants a right of action in admiralty for death caused by a wrongful act, neglect or default occurring in the air space over the high seas. If admiralty has jurisdiction for deaths occurring upon the high seas, a fortiori, why should admiralty not also have jurisdiction for injuries occurring over the high seas?

Before the days of the airplane and the acquisition of upper space as a channel for the airplane, our law has known and been required to deal with matters as they related to land and with matters as they related to the sea. With the advent of air navigation into our scheme of life, we have had to revise and modify much of that law. In a sense, and guided by thinking of the past centuries, are we not logically compelled to adopt the perpendicular plane theory as a jurisdictional guide?

At common law the doctrine had been enunciated, Cujus est solum ejus est usque ad coelum "Whose is the soil, his it is up to the sky", or "He who owns the soil or surface of the ground owns, or has an exclusive right to, everything which is upon or above it to an indefinite height." (Black's Law Dictionary, page 487.)

In our new scheme of things, with the coming of aerial navigation, legislatures and courts were bound to reconcile the ownership of land with the conflicting interference of the air space over that land. It is unnecessary here to discuss the enactments of Congress and the various state legislatures, except to remember that Congress in regulating air commerce, did define navigable air space as "air space above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority." (49 U.S.C.A. § 180.)

And while we are not here met with a problem within the defined "navigable air space", it is related to one decided in United States v. Causby et ux., 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, 1946. There the problem related to damages done to a chicken farm by United States bombers, transports and fighter planes. At page 260, at page 1065 of 66 S.Ct., Mr. Justice Douglas discussed the *ad coelum* doctrine in these words:

"It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—Cujus est solum ejus est usque ad coelum. But that doctrine has no place in the modern world."

And at page 262, at page 1066 of 66 S.Ct.:

"The fact that the planes never touched the surface would be as irrelevant as the absence in this day of the feudal livery of seisin on the transfer of real estate."

A little further on, the Court said: "In the supposed case, the line of flight is over the land. And the land is appropriated as directly and completely as if it were used for the runways themselves." This speaks of torts as they were committed by planes while flying over land. Similarly, a public taking of the air space a short distance above the land surface was determined to be a public taking in a condemnation proceedings, as equally as if the surface of the land had been taken. The remedy for the procurement of compensation for the condemnation of the land was a sufficient remedy for compensation of the taking of the air space above the land. Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, 1962. These two cases, Causby and Griggs, relate to torts as they were committed by airplanes while flying through air space over land.

In D'Aleman v. Pan American World Airways, supra, the cause of action occurred over the sea. Here, Judge Moore, 259 F.2d at page 495, said this:

"However, with the development of the transoceanic airship the same extraterritorial situation was made possible in the air. The Act was designed to create a cause of action in an area not theretofore under the jurisdiction of any court. The means of transportation into the area is of no importance. The statu-

tory expression 'on the high seas' should be capable of expansion to, under, or over, as scientific advances change the methods of travel. The law would indeed be static if a passenger on a ship were protected by the Act and another passenger in the identical location three thousand feet above in a plane were not. Nor should the plane have to crash into the sea to bring the death within the Act any more than a ship should have to sink as a prerequisite."

From these three decisions alone, it is obvious that contact either with the land or with the water over which the plane is flying is not a jurisdictional requisite for the bringing of an action where remedies are otherwise provided. In D'Aleman it has been held that the Death on the High Seas Act grants a right of action in admiralty for death caused by wrongful act, neglect or default occurring in the air space over the high seas and that the trial court properly heard the case in admiralty. So far as it relates to the occurrence of a wrongful action over the high seas, whether a plane comes in actual physical contact with the sea does not matter. What does matter is that the cause of action occurs over the sea.

The judicial power of the United States extends to all cases of admiralty and maritime jurisdiction. United States Constitution, Article 3, § 2. Congress has vested this jurisdiction in district courts. 28 U.S.C.A. § 41. Generally admiralty and maritime jurisdiction extends to all things done upon and relating to the sea and waters navigable therefrom, to transactions relating to commerce and navigation, to damages for injury upon the sea, and to all maritime contracts, torts and injuries. 1 Am.Jur., Admiralty, § 9, pg. 550.

Since it appears here that the wife-libellant was injured in the air space over the Atlantic Ocean, admiralty is the proper forum for an adjudication of this action.

■ Neither does the Warsaw Convention alter that circumstance. The Warsaw Convention was entered into on October 12, 1929, at a Multilateral Convention and related to international air transportation. The United States was not one of the original participating parties, but it adopted the Convention by proclamation of the President of the United States on October 29, 1934, in accordance with Congressional authority. 49 U.S.Statutes at Large, pg. 3000 et seq.

The Warsaw Convention does not create an independent right of action. Noel et al. v. Linea Aeropostal Venezolana, supra. While the Warsaw Convention determines where actions resulting from international airplane flights should be litigated, it refers only to national boundaries and not to places within the boundaries of countries. Pitman v. Pan American World Airways, Inc., D.C., 223 F. Supp. 887, 888, 1963.

Article 28 directs that an action for damages may be brought in one of four places "at the option of the plaintiff" in the territory of one of the High Contracting Parties "either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination." Pitman v. Pan American World Airways, supra. This Admiralty Court is within the permissible "four places" and if the Warsaw Convention applies, this action has been properly brought.

■ But does the Warsaw Convention apply? We have no way of knowing without a proper pleading containing pertinent averments. The Convention's provisions are contractual in nature as they affect carriers by air and their passengers and consignors of goods. It does not apply in all cases. Article 3 requires that the carrier of passengers must deliver a passenger ticket which shall contain certain information, and inter alia, "[a] statement that the transportation is subject to the rules relating to liability established by this convention." In paragraph 2 this is included: " * * * Nevertheless, if the carrier accepts a

passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability."

As the respondent has here presented its motion and as its counsel has argued, the respondent assumes that there was compliance by the carrier with the provisions contained in Article 3 in order to permit it to avail itself of the provisions of the Convention. There is nothing in the record to so indicate. If the Warsaw Convention has any factual application here, it must first be pleaded in order to entitle it to a basis for any procedural moves.

For the reasons herein set forth, the respondent's Motion To Dismiss will be denied.