No. 46,884

Duane F. Ours, *Appellee,* v. Arthur W. Lackey, d/b/a Lackey Construction Company, and Tri-State Insurance Company, *Appellants.*

(515 P. 2d 1071)

Opinion filed November 3, 1973. ■

Kenneth E. Peirce, of Hutchinson, argued the cause, and Frank S. Hodge, H. Newlin Reynolds, Dennis O. Smith and Dan W. Forker, Jr., of Hutchinson, were with him on the brief for the appellants.

Abraham Weinlood, of Weinlood, Cole, Oswalt & Shaffer, of Hutchinson, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the respondent and its insurance carrier in a workmen's compensation case challenging an award of compensation to the claimant.

The primary question presented is whether a timely written claim was made by the injured workman.

On March 4, 1969, Duane F. Ours (claimant-appellee) worked as a foreman for Lackey Construction Company. That day while installing some pipe his wrench slipped, resulting in injury to his right elbow. The claimant stopped work for a few minutes then returned to other work. For several months thereafter claimant continued to work, receiving no medical attention, although he experienced occasional discomfort and locking of his right elbow. During this period he made no claim for workmen's compensation.

On July 2, 1969, claimant was still working for the respondent under circumstances covered by the Kansas Workmen's Compensation Act. On that date, while working under a vehicle, claimant reached for a wrench and his right arm locked at the elbow. There is some dispute in the evidence as to whether claimant bumped his arm in the process of reaching or not. He got out from under the vehicle and pulled on his wrist until the elbow joint unlocked. He told his employer about the incident the same day it occurred.

After the July 2 incident claimant experienced increasing discomfort with his elbow. On July 14, 1969, he consulted his family physician who attempted conservative treatment for several days.

When this proved to be unsuccessful claimant was referred to Dr. Anderson, a qualified orthopedic surgeon. After several more weeks surgery was determined to be necessary and the surgery was performed on December 15, 1969.

Dr. Anderson testified that during the operation he found three loose bodies in the superior of the joint. He further testified that, assuming the loose bodies preexisted July 2, 1969, the action of stretching the arm to pick up a wrench could "definitely" have caused claimant's elbow to lock. The doctor said experience had shown that in order for a loose body to become wedged between two bones the stretching and twisting would likely have to be accompanied by sufficient force to cause the body to be forced into place. To illustrate this point he explained that if a person wants to get a marble through a piece of cardboard with a pinhole in it, he would have to push the marble through the hole. The chances of the marble falling through the hole are very slim. He said the same principle applies to the wedging of a loose body in the elbow joint; the body would have to be forced into the joint. Dr. Anderson testified that in his opinion the July 2, 1969, accident was the immediate cause requiring claimant's surgery, and he concluded that the claimant had sustained a 15% permanent loss of physical function in the right upper extremity.

Subject to the July 2 incident the claimant frequently consulted with his employer's office manager about forms to be completed for workmen's compensation payments. The office manager never had any forms, but always promised to obtain some. In early September, Mrs. Lackey, wife of the respondent company owner, took over the office management. She testified that claimant inquired at frequent intervals about getting his bills paid, and that she assisted him by writing several letters on his behalf.

From September of 1969 to the following September there were numerous letters written between the various parties involved. The respondent's insurance carrier until July 1, 1969, was Iowa Mutual Insurance Company ( designated as appellee, but not a party to this appeal), and from July 1 (including July 2, 1969) Tri-State Insurance Company (appellant) was the respondent's insurance carrier. The various communications are summarized in their chronological order.

On September 30, 1969, the respondent wrote to McInteer, Jukes & Kennedy, the local agents for Tri-State. The substance of this com-

munication was to submit an accident report on workmen's compensation form A with a brief report concerning the accident. The letter also indicates the respondent had previously sent a letter to Iowa Mutual, but Iowa Mutual had called and told them to send a report to Tri-State's representative.

On Sunday morning October 19, 1969, a full report was made in person by the claimant to Mr. Brownlee of Kansas Claims Service of Wichita, Inc., who also represented Tri-State. This meeting was arranged as a result of the September 30 communication from the respondent. The substance of this report, recorded in the handwriting of Mr. Brownlee, was retained in Tri-State's files. The report was an accounting of how the accident occurred and the medical attention claimant had received. It set forth all of the information necessary to make a claim for workmen's compensation.

On November 19, 1969, Kansas Claims Service wrote claimant a letter advising him that after an "investigation" it was the "opinion of the company [Tri-State] that your July injury was a reoccurrence" of the March 4 injury. The letter recommends contacting the respondent "and advise him that claims should be presented to" Iowa Mutual who carried the insurance on March 4.

On December 15, 1969, local representatives of Tri-State wrote the respondent. This was a letter of transmittal enclosing a copy of K. S. A. 44-520 and 44-520a, which pertain to the notice of injury and the time limitation applicable to the filing of a workmen's compensation claim.

On December 17, 1969, Kansas Claims Service wrote to claimant for Tri-State. This letter was "Supplemental to ours of 11/19/69," and its purpose was to "advise that we have been instructed by the insurer of Lackey Construction Company to respectfully *decline liability on your workmen's compensation claim.*" (Emphasis added.)

On January 11, 1970, the respondent wrote to the representative of Iowa Mutual (insurer up to July 1, 1969). The letter recites that claimant informed the respondent he hasn't received "weekly compensation pay" from Iowa Mutual, and the respondent states it has sent all the bills and insurance reports necessary. An immediate reply was requested and the respondent retained a copy of this letter on file. It was not signed by the claimant.

On January 16, 1970, Iowa Mutual's representative replied to the respondent's letter of January 11. The letter informs the respondent

that Iowa Mutual will not assist in "this claim" because the injury occurred after their policy expired.

On August 25, 1970, the respondent wrote to the Workmen's Compensation Director. This letter was written to apprise the director of claimant's difficulty in getting compensation for his injury.

On September 1, 1970, the Workmen's Compensation Director wrote the respondent stating, that if the respondent would send particulars regarding the injury, the department would communicate with the insurance companies involved "to attempt to straighten out the matter."

On September 5, 1970, the claimant filed a formal written claim with the respondent for compensation by using workmen's compensation form 49.

On September 18, 1970, the claimant sent the Workmen's Compensation Department the particulars concerning his injuries, pursuant to the Department's September 1, 1970, request.

Subsequently workmen's compensation proceedings were conducted. Iowa Mutual was absolved and is not a party to this appeal. The award made by the examiner was filed February 18, 1972.

The findings of the hearing's examiner may be summarized as follows: First, the examiner found the claimant's disability resulted from the July 2, 1969, accident which arose out of and in the course of his employment. Second, the examiner said:

"The actual circumstances surrounding the question of whether or not written claim was timely filed presents a sad and sordid story of calculated insurance company misdirection which so totally confused the respondent, their assured, and the injured claimant, that they nearly managed to undermine the very theory and spirit of the Workmen's Compensation Act."

The examiner found that both the September 30, 1969, letter from the respondent to Tri-State's local representative, and the January 11, 1970, letter from the respondent to Iowa Mutual's representative, a copy of which was retained by the respondent, constituted a written claim timely delivered to the respondent. The examiner specifically found that the November 19 letter written from Kansas Claims Service to claimant clearly acknowledges claimant's intent to claim compensation as manifested in the September 30 letter to Tri-State's representative and the October 19 oral report made to Kansas Claims Service.

Third, the examiner found that in event the written claim was

not timely filed, the respondent waived the necessity of written claim for compensation by the acts and conduct of Tri-State Insurance Company and, or, its agents. The examiner found the November 19, 1969, letter from J. W. Baldwin of Kansas Claims Service, Inc. misled claimant and the respondent in their efforts to obtain compensation, and the statement declaring the July 2, injury to be a "reoccurrence" of the March 4, 1969, injury, and therefore not a new injury, was a misrepresentation of our law.

Based on the above findings the examiner awarded the claimant compensation in the total sum of $1,876.70 all of which was due and payable in one lump sum at the time of the award. Claimant was also awarded medical expenses.

Upon review the Workmen's Compensation Director found:

". . . While not specifically adopting or rejecting all the findings of Examiner Carpenter on the filing of a written claim, the Director finds there is sufficient evidence in the record to sustain a finding a written claim was timely made. . . ."

Thereupon the director noted a written claim could be waived under certain circumstances. In all other respects the award of the examiner was sustained.

The case was then appealed to the Reno County District Court where the "findings and decision of the Examiner, dated February 18, 1972, and as reviewed and approved by the Workmen's Compensation Commissioner" were adopted.

Appeal has been duly perfected to this court by the respondent and Tri-State from the district court's judgment.

The appellant contends the claimant failed to file a timely written claim as required by the Workmen's Compensation Statute. If this point is determined adversely to the appellant it contends the trial court erred in finding that claimant's disability resulted from his accident of July 2, 1969. The appellant also contends the award to the claimant is not supported by substantial competent evidence.

K. S. A. 1972 Supp. 44-520a, here applicable, reads in part:

"(1) No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered or certified mail within two hundred (200) days after the accident. . . ."

It is the position of the appellant that a valid claim for workmen's compensation must be asserted by the injured workman against his employer to invoke the provisions of the act pursuant to which

compensation is payable. (Citing, *Davis v. Reed,* 188 Kan. 159, 360 P. 2d 847.)

Most of the important principles of law governing this appeal are stated in *Fitzwater v. Boeing Airplane Co.,* 181 Kan. 158, 309 P. 2d 681, where the authoritative cases are accumulated and some of the basic rules in determining workmen's compensation cases are stated and discussed. It is unnecessary to restate all of these rules. Our opinion will proceed on the assumption that the reader is familiar with these rules.

Whether an instrument propounded as a written claim or whether a claim for compensation has been filed in time is primarily a question of fact. As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in doing so all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears, such finding is conclusive and will not be disturbed on review. Only in the event the evidence is undisputed, is the question one of law for appellate review.

On the appellant's first point—whether claimant served a timely written claim upon the respondent—the evidence presented by the record is undisputed. The various documents heretofore summarized were admitted as exhibits in evidence without objection and the testimony of the various witnesses on this point, including the claimant and Mrs. Lackey on behalf of the respondent, is not in conflict. In fact, Mrs. Lackey assisted the claimant to the best of her ability to get workmen's compensation payments for the injuries he sustained on the job.

*Fitzwater* stands for the proposition that a written claim for compensation prescribed by 44-520a, *supra,* need not take on any particular form so long as it is in fact a claim. In determining whether or not a written instrument is in fact a claim the court will examine the writing itself and all the surrounding facts and circumstances, and after considering all these things, place a reasonable interpretation upon them to determine what the parties had in mind.

In *Fitzwater* it was said:

"Whether an instrument in writing propounded as a written claim in a workmen's compensation case actually constitutes a claim is governed by the intention of the parties. In other words, the court will look to the parties to determine what was in their minds in preparing and receiving the document. . . ." (p. 164.)

The factual situation presented in *Fitzwater* involved only one letter by the claimant's doctor addressed to Whom It May Concern and an interoffice memorandum of the Boeing Airplane Company which was sent from the company doctor to the personnel department. Only the letter was asserted as fulfilling the requirement that a written claim was served upon the employer. The limitation of the language in *Fitzwater* to a single instrument being propounded as a written claim is not material. The statement of a rule of law in a given case must be tempered by the facts which give rise to its pronouncement.

In the case at bar there are many written documents. In determining whether or not a written claim was in fact served on the respondent the court will examine the various writings and all the surrounding facts and circumstances, and after considering all these things, place a reasonable interpretation upon them to determine what the parties had in mind. The question is, did the employee have in mind compensation for his injury when the various documents were prepared on his behalf, and did he intend by them to ask his employer to pay compensation?

This court is firmly committed to the rule that the provisions of the Workmen's Compensation Act are to be liberally construed in favor of the workman and compensation awarded where it is reasonably possible to do so. (*Odell v. Unified School District*, 206 Kan. 752, 756, 481 P. 2d 974.) In the instant case, by failing to file a report of the July 2 accident within the 28 days time limitation prescribed by K. S. A. 1972 Supp. 44-557, the respondent set in motion the one year time limitation provided in the statute for the commencement of workmen's compensation proceedings. During this limitation period the claimant made full disclosure of both accidents involving injury to his right elbow.

In reviewing the evidence pertaining to Tri-State the record establishes that the respondent reported to Tri-State the fact of the claimant's injury on September 30, 1969, by letter, and it also transmitted an accident report on workmen's compensation form A, for handling. It is clear Tri-State then set up a file for the claimant, since prior to October 19, 1969, Tri-State had referred the matter for handling on Tri-State's behalf to Kansas Claims Service who had, in turn, sent a letter to the claimant to set up an appointment. In response thereto the claimant telephoned Kansas Claims' Mr. Baldwin and made an appointment for Sunday morning, October

19, 1969. At this point, obviously, Tri-State, Kansas Claims, and the claimant surely could have had no misunderstanding concerning the purpose of the file in Kansas Claims' hand—that the meeting with claimant in the Kansas Claims' office was related to the claimant's injury and his right to workmen's compensation. The statement taken by Mr. Brownlee of Kansas Claims on October 19, 1969, is dated and commences with the words "Report of Duane F. Ours. . . ." It was recorded by Mr. Brownlee in his own handwriting, but the information which it contained was given by the claimant to Mr. Brownlee the agent of Tri-State. In this report the claimant stated for whom he worked, his position and wages, hours and days of work, his average weekly wage, his prior physical condition, and he gave details of his injury in early 1969 and he also gave details of the injury on July 2, 1969. He described his medical attention, stated that he had advised his employer shortly after both injuries, and that he had lost no time from work as the result of the first injury.

It was stipulated by the appellant that the report of October 19, 1969, given by the claimant to Mr. Brownlee "was related to the Claimant's claim for workmen's compensation in this case and that it came out of this claim file and was in the possession of Tri-State and its attorneys." It was stipulated that Mr. Brownlee of Kansas Claims Service, and Kansas Claims Service, were acting on behalf of Tri-State Insurance Company.

The conclusion is inescapable that the report was prepared and received at the Kansas Claims' office on October 19, 1969, as a claim for compensation.

The respondent, Tri-State and Kansas Claims Service acting for Tri-State, always considered claimant's report dated October 19, 1969, in the nature of a claim for compensation. This is evidenced by the letter of November 19, 1969, from Kansas Claims Service to the claimant wherein it referred to the investigation which had been made, the assertion that there had been no new injury in the claimant's case, the opinion that the second injury was a "reoccurrence" of the first injury, and recommending that *the claim* should be presented to the carrier at the time of the original injury. It is even more emphatic in the letter of Kansas Claims on December 17, 1969, addressed to the claimant, wherein it states that Kansas Claims had been instructed by the respondent's insurer to "decline liability on your workmen's compensation claim. . . ."

When the written communications resulting from the claimant's efforts to obtain workmen's compensation benefits were *prepared by the respondent* and mailed to its insurance carrier, it is readily apparent the respondent was aware of the fact that the claimant was making claim for compensation. The written nature of these communications supplies the requirement that a written claim for compensation shall be served upon the employer.

The evidence is clear that both the claimant and the respondent were seeking compensation for claimant's injuries under the Workmen's Compensation Act. Mrs. Lackey's testimony concerning why she subsequently sent the January 11, 1970, letter to Iowa Mutual's agent is evidence of the intention of the respondent and the claimant. She testified:

". . . Do you know what was said between you and Mr. Ours before you typed this?

". . . WITNESS: Well, as you know, we are required by law to carry Workmen's Compensation insurance and when an employee is injured you wonder why, *when you have made out claims,* why they are not being answered, and something is not being done. So he had come in the office and also wondered and asked me, and I said in turn, 'I'll write a letter and see if I can get an answer.'" (Emphasis added.)

Based upon an examination of the written documents and all the surrounding facts and circumstances concerning which there is no conflict presented by the record, we find as a matter of law a written claim for compensation was in fact served on the respondent by the claimant. A reasonable interpretation of the evidence discloses that the parties had compensation in mind.

The written report of the claimant dated October 19, 1969, which was prepared, received and retained by the insurance carrier of the respondent from that date on, was clearly understood and intended to be a written claim for compensation. Since this document was prepared only 109 days after the injury of July 2, 1969, it was timely served upon the authorized agent of the respondent, the respondent having referred the matter for handling to Tri-State, its insurance carrier.

It is to be noted none of the written documents in evidence which have a bearing on the claim for workmen's compensation were signed by the claimant, but they all carried the claimant's name and were in writing. Careful analysis of the provisions of 44-520a, *supra,* indicates that the statute does not require that the claim be signed by the claimant. The written claim may be pre-

sented in any manner and through any person or agency. The claim may be served upon the employer's duly authorized agent. The statute does not require that the written claim must be signed by or for the claimant.

In discussion 44-520a, *supra*, in the case of *Fitzwater v. Boeing Airplane Co.*, supra, the court said:

". . . The question is, did the employee have in mind compensation for his injury when the instrument was signed by him or on his behalf, and did he intend by it to ask his employer to pay compensation? . . ." (p. 166.)

The authority cited by the court for the foregoing proposition was *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131. The written demand filed by the claimant in *Richardson* was not filed until more than 90 days had elapsed after the injury, the limitation then imposed by the statute. But medical aid was furnished to the claimant and his written claim was filed within 90 days thereafter which authorized recovery.

The court in *Suttle v. Marble Produce Co.*, 140 Kan. 13, 34 P. 2d 116, refers to the *Richardson* case and erroneously said: ". . . [T]here the only defect was the failure of the claimant to sign the writing after referring to the accident and his injury in detail, . . ." (p. 17.) In *Suttle* the court did not consider the matter of signing by the claimant of any importance, if there was a writing, which under all the circumstances amounted to a claim.

Analysis of the foregoing cases indicates that at no time has this court squarely passed upon the question as to whether a written claim for compensation to be served upon the employer in a workmen's compensation case pursuant to 44-520a requires the signature of the claimant. As we construe 44-520a the signature of the claimant on a written claim for workmen's compensation is not required.

The appellant in the instant case relies upon *Suttle v. Marble Produce Co.*, supra, claiming that it is directly in point and controls the decision in the instant case. There the court was concerned with a written letter of the insurance agent to the insurance company he represented, written at the request of the claimants and the respondent, inquiring of the insurance company as to the liability of the respondent and, possibly, the insurance carrier. In the opinion the court said this was "widely different from a written claim for compensation served on the respondent."

In an attempt to draw an analogy here the appellant relies upon the letter of September 30, 1969, written by the respondent to local

agents for Tri-State. This is the only document the appellant utilizes to draw the analogy with the facts in the *Suttle* case. All of the other documents, including the October 19, 1969, report made by the claimant to an agent of Tri-State, and the evidence in this case is ignored by the appellant. We do not find *Suttle* to be analogous or controlling in this case.

In view of the foregoing the alternative finding of the examiner and the director adopted by the trial court, that Tri-State waived the necessity of a written claim for compensation, is immaterial.

The remaining points asserted by the appellant on appeal pertain to whether the evidence presented by the record is sufficient to sustain the findings of the trial court.

We have carefully reviewed the evidence presented by the record and conclude that: (1) The finding of the trial court that claimant's disability resulted from his accident on July 2, 1969, is supported by substantial competent evidence; and (2) that the award entered in favor of the claimant is supported by substantial competent evidence. (See, *Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108, and authorities cited therein.)

Our court follows the rule that aggravation of a preexisting condition is compensable under the Workmen's Compensation Act and does not relieve the employer from liability on the second injury. (*Kronig v. Nolan Motor Co.*, 186 Kan. 534, 351 P. 2d 1; and *Odell v. Unified School District*, 206 Kan. 752, 481 P. 2d 974.)

An accident within the Workmen's Compensation Act is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, often accompanied by a manifestation of force. (*Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418.)

It has been held that the elements of the definition of an "accident" as applied to the Workmen's Compensation Act should not be construed in a strict and technical sense, but in a manner designed to effectuate the true intent and purpose of the act, namely, that industry should bear the expense of accidental injuries to workmen occasioned by the employment. (*Winkelman v. Boeing Airplane Co.*, 166 Kan. 503, 203 P. 2d 171.)

The judgment of the lower court is affirmed.