No. 82,148

SHIRLEY GRAFF, *Appellant*, v. TRANS WORLD AIRLINES, *Appellee*.

(983 P.2d 258)

Opinion filed July 16, 1999.

*B. Joyce Yeager*, of Yeager Law Firm, L.L.C., of Prairie Village, argued the cause, and *Michael L. Hodges*, of Law Offices of Michael L. Hodges, of Lenexa, was with her on the briefs for appellant.

*Thomas V. Clinkenbeard*, of Evans & Dixon, of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Shirley Graff appeals from the decision of the Workers Compensation Board (Board) which overturned the administrative law judge's (ALJ) award and denied benefits. Graff was a flight attendant. The basis for her claim was that she suffered from carpal tunnel syndrome as a result of work activities performed in the airspace over Kansas, among other places. The appeal was transferred from the Court of Appeals on this court's motion, pursuant to K.S.A. 20-3018(c).

The Board made the following findings of fact and conclusions of law:

## "Findings of Fact and Conclusions of Law

"After reviewing the record and considering the arguments by the parties, the Appeals Board concludes the Award by the ALJ should be reversed and benefits denied. The Board concludes claimant has not proven she suffered accidental injury in Kansas and the Kansas Act, therefore, does not apply. Because of the possibility this decision will be appealed, the Board has also made findings on the other issues raised.

### "Findings of Fact

"1. Claimant worked for respondent as a flight attendant from July 1966 through November 1991.

"2. The Board also finds claimant developed bilateral carpal tunnel syndrome which was caused, aggravated or accelerated by her work activities as an airline hostess, including the beverage service, handing out trays, and pushing the beverage cart. This point does not appear to be in dispute and this conclusion is supported by the testimony of Dr. Cameron D. Jones, the only physician to testify in this case.

"3. Claimant alleges that during 1991 she developed carpal tunnel syndrome from her work activities and further alleges that a portion of those activities were performed while flying over Kansas. The evidence establishes that during 1991 claimant flew from St. Louis to Palm Springs, St. Louis to Salt Lake City, St. Louis to Honolulu, and St. Louis to Los Angeles and San Francisco. She also flew from Chicago to San Antonio and St. Louis to Phoenix. Because these flights follow a variety of alternate routes, any given flight may or may not cross over Kansas. As a result, claimant cannot state which flights went over Kansas, how long the flights were over Kansas, what activities she engaged in during any specific flight, or what specific activities she engaged in over Kansas. Nevertheless, the Board finds that the evidence establishes by more probably than not claimant did fly over Kansas during 1991, and did, while flying over Kansas, engage, at least some, in the type of activities which caused, aggravated, or accelerated her carpal tunnel syndrome.

"4. The flights on which claimant flew did not at any time during 1991 take off from or land in Kansas. Claimant is not a resident of Kansas. Claimant's contract of employment was not entered in Kansas and claimant's principal place of employment was not in Kansas.

"5. As of December 2, 1991, claimant retired from her employment with respondent. Her last day of work was November 30, 1991, the date the Board finds to be the date of accident.

"6. Although claimant apparently thought the restrictions recommended by Dr. Jones would prevent her from doing her job with respondent, Dr. Jones testified he did not intend the restrictions to prevent her from returning to work. Claimant did not advise respondent she was leaving because of her injury and respondent did not, at any time, advise her she could not return to work.

"7. Claimant has not looked for work since leaving her job with respondent.

## "Conclusions of Law

"1. The Kansas Workers Compensation Act applies to injuries arising out of and in the course of employment in Kansas. K.S.A. 44-505.

"2. The Board finds claimant has not proven she suffered accidental injury in Kansas. The Board does not consider the thin and uncertain connection between claimant's injuries and the state of Kansas sufficient to establish accidental injury in Kansas. K.S.A. 44-501.

"3. Since the accident did not occur in Kansas, claimant's contract of employment was not in Kansas, and claimant's principal place of employment was not in Kansas, the Kansas Workers Compensation Act does not apply and benefits must be denied. K.S.A. 44-505 and K.S.A. 44-506.

"4. K.S.A. 44-506 excludes activities so involved in interstate commerce as not to be subject to the legislative power of this state. This exclusion has been applied only where the federal law provides an exclusive remedy as it does in the case of railroad employees covered by the federal employer's liability act. [Krouse] v. Lowden, 153 Kan. 181, 109 P.2d 138 (1941).

"5. If the accident in this case had occurred in Kansas, Application of the Kansas Act to the injury in this case would not violate full faith and credit provisions of the United States Constitution. In support of the argument that application of the Kansas Act to the facts of this case would be unconstitutional, claimant cites several federal court decisions which consider the full faith and credit provision[s] of the U.S. Constitution. The Board has reviewed those decisions and concludes that application of a state workers compensation act to a claim involving an injury which occurred within the state is not considered to contravene requirements of the United States Constitution. *Pacific Employers Insurance Co. v. Industrial Accident Comm'n*, 306 U.S. 493 (1939).

"6. Even if the accident occurred in Kansas, claimant would not be entitled to a work disability and benefits would be based on the stipulated 7.5 percent functional impairment. In support of an award of work disability, the ALJ cites *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992). The Court of Appeals there held that retirement does not preclude an award of work disability. But the Board considers the circumstances in this case to be significantly different. Here the record does not support a conclusion that claimant could not have returned to work for respondent at a comparable wage. Dr. Jones, one of the treating physicians, testified he did not intend for his restrictions to permanently prevent claimant from returning to her job. Claimant left employment for respondent without giving her injury as a reason. Respondent did not prevent claimant from returning to her previous work and respondent did not have an opportunity to provide accommodated work if, indeed, accommodations were required. Although retirement may not prevent an award of work disability, retirement should not be used to create a work disability. The Board, therefore, concludes claimant's award would be limited to the stipulated functional impairment of 7.5 percent."

One member of the Board dissented from the majority decision because he believed that Graff had established injury in Kansas. The dissenting member wrote:

"The Kansas Workers Compensation Act is to be liberally construed to bring employers and employees within its provisions. Dr. Jones related claimant's carpal tunnel syndrome condition to her work activities as an airline hostess. The record establishes that a substantial number of claimant's flights went over Kansas and that she engaged in those same work activities that caused or aggravated her condition while flying over Kansas. The airspace over Kansas is part of Kansas. It follows, therefore, that claimant's accident occurred, at least in part, in Kansas. With certain exceptions, the Kansas Workers Compensation Act generally applies to injuries occurring within this state. Granted, there are other states to which claimant's employment has greater contact, and those states may have a greater interest in this claim. But the jurisdictional test for applying the Kansas Workers Compensation Act is not which state has the greatest interest in the claim. Instead, the test is whether claimant has proven it is more probably true than not true that she sustained injury by accident that arose out of and in the course of her employment within this state. She has proven this and the Kansas Act applies to her claim."

The Board's decision that Graff's sustaining injury in Kansas airspace was not compensable under the Workers Compensation Act (Act) is a matter of law that may be reviewed by this court pursuant to K.S.A. 1998 Supp. 44-556(a). The Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, provides that a reviewing court shall grant relief if it determines that the agency has erroneously interpreted or applied the law. K.S.A. 77-621(c).

K.S.A. 1998 Supp. 44-505(a) provides in part that "[s]ubject to the provisions of K.S.A. 44-506 and amendments thereto, the workers compensation act shall apply to all employments wherein employers employ employees within this state." It is Graff's position that Trans World Airlines (TWA) employed her within this state. The provisions of the Act are to be liberally construed for the purpose of bringing employers and employees within its provisions to provide protection of the Act to both. K.S.A. 1998 Supp. 44-501(g).

Graff first argues that the Board's findings of fact and conclusions of law are inconsistent. In particular, she contrasts the Board's

finding that her "evidence establishes by more probably than not claimant did fly over Kansas during 1991, and did, while flying over Kansas, engage, at least some, in the type of activities which caused, aggravated, or accelerated her carpal tunnel syndrome," with the Board's conclusion that "claimant has not proven she suffered accidental injury in Kansas."

Graff cites *Notarian v. Trans World Airlines, Inc.*, 244 F. Supp. 874, 876-77 (W.D. Pa. 1965), for the proposition that it was not necessary for her to set foot in Kansas in order to be covered by this state's workers compensation law. The plaintiff in that case was a passenger who was injured when the airplane in which she was traveling over the Atlantic Ocean encountered turbulence. She filed a complaint in Admiralty against the airline, which sought dismissal of the complaint on the ground that the airplane "made no contact with the water and is therefore not includable in admiralty." 244 F. Supp. at 875. Rejecting TWA's position, the court stated that it was "obvious that contact either with the land or with the water over which the plane is flying is not a jurisdictional requisite for the bringing of an action where remedies are otherwise provided." 244 F. Supp. at 877.

TWA concedes that Kansas law applies to its airspace, but argues that application of Kansas law to Graff's injuries does not necessarily follow. TWA would reconcile the finding and the conclusion in this way:

"[T]he Appeals Board found that claimant had most likely engaged in the 'type' of activity otherwise felt to be injurious. It went on to conclude it found no evidence that injury, in fact, occurred over the airspace of Kansas. In other words, similar activities may have been entertained while over Kansas but without evidence of harm."

TWA's contention is that Graff did not show that her injury manifested itself in Kansas airspace. No cases have been brought to the court's attention in which the state where an injury became evident was an issue. TWA's argument would have merit if Graff's injury resulted from a single trauma. However, the reasoning applied by the court in other work-related repetitive trauma cases makes development of injury rather than its manifestation the determinative factor. For example, in *Murphy v. IBP, Inc.*, 240 Kan. 141, 144-

45, 727 P.2d 468 (1986), where "the *aggravation* to claimant's arms and hands was simultaneous, even though the injuries did not *manifest* themselves simultaneously," the court held that the injury was compensable as a disability to the body as a whole rather than as a scheduled injury. If the same approach were used in the present case, significance would be placed on where Graff's hands and arms were aggravated rather than on where the injury manifested itself.

What the Board may have had in mind with its seemingly inconsistent finding and conclusion was that Graff did not establish that the amount of time she spent performing her work activities in Kansas airspace was great enough to result in injury of the repetitive movement type. Put another way, the Board's thinking may have been that the evidence did not show that the extent of her work activities performed in Kansas airspace significantly contributed to her injury. If this reasoning were to be universally applied, claimant could be left without a remedy unless the state of her principal place of employment or where her employment contract was made provides for her, as Kansas would in those circumstances.

Graff cites *Ours v. Lackey*, 213 Kan. 72, 515 P.2d 1071 (1973), for the proposition that injuries aggravated in Kansas are compensable under this state's workers compensation law. Ours injured his elbow in March 1969. In an incident in July 1969, the condition of his elbow was significantly worsened. Under the statutes then in force, aggravation of a preexisting condition was compensable so that Ours received benefits for his disability from the July incident. The aggravation of an injury, as the court has used the phrase in regard to repetitive trauma injury, differs from "aggravation" as used in *Ours*. See *Murphy*, 240 Kan. at 144-45. *Ours* has no application in the circumstances of the present case. Where a repetitive trauma injury is caused or aggravated by work activities, some of which occurred in Kansas, the injury is compensable under the Act.

The Board found that Graff's bilateral carpal tunnel syndrome was caused, aggravated, or accelerated by her activities as a flight attendant, and that she performed some of those activities in the airspace over Kansas. TWA concedes that Kansas law applies to occurrences in its airspace. Thus, it follows that Graff sustained an

injury in Kansas and she was entitled to compensation for that injury.

Second, Graff argues that K.S.A. 44-506 does not preclude application of the Act to flight attendants. It is not entirely clear what the Board decided in this regard. K.S.A. 44-506 provides:

"The [workers] compensation act shall not be construed to apply to business or employment which, according to law, is so engaged in interstate commerce as to be not subject to the legislative power of the state, nor to persons injured while they are so engaged: *Provided*, That the [workers] compensation act shall apply also to injuries sustained outside the state where: (1) The principal place of employment is within the state; or (2) the contract of employment was made within the state, unless such contract otherwise specifically provides . . . ."

Graff's contention is that the 44-506 exclusion applies only where federal law provides an exclusive remedy for work-related injuries, as it does for railroad workers. The case cited by the Board, *Krouse v. Lowden*, 153 Kan. 181, 109 P.2d 138 (1941), involved a railroad employee who was engaged in interstate commerce and subject to the Federal Employers' Liability Act. TWA argues that 44-506 precludes application of the Kansas Act to employment in interstate commerce except where a substantial State interest warrants imposition of state law.

It appears from the annotations to 44-506 that the vast majority, if not all, of the cases construing the interstate commerce exclusion involve railroad workers. TWA contends that applicability of 44-506 is decided on a case-by-case rather than industry-by-industry basis. The test, the argument continues, is whether there is a substantial State interest that would justify the imposition of state law in a matter involving interstate commerce and, if so, whether that interest would outweigh the impact on interstate commerce. For the balancing test it proposes, TWA relies on two United States Supreme Court cases from the 1930's involving workers from one state being injured in another: *Alaska Packers Assn. v. Comm'n.*, 294 U.S. 532, 79 L. Ed. 1044, 55 S. Ct. 518 (1935); *Bradford Elec. Co. v. Clapper*, 286 U.S. 145, 76 L. Ed. 1026, 52 S. Ct. 571 (1932). In TWA's view, Kansas has no interest in entertaining the claim of Graff, a worker who has no ties to the state. On the other side of the balance, TWA would place the huge number of potential work-

ers compensation claims that could be filed in this state. In other words, the "balancing test" really comes down to two arguments— (1) Kansas has no interest in Graff's injuries and (2) entertaining Graff's claim will open the floodgates so that Kansas will be inundated by interstate workers' injury claims.

TWA's transportation of passengers by aircraft for compensation from one state to another meets the definition of interstate air commerce under 49 U.S.C. 40102(a)(24) (1994). The airline asserts that the federal government regulates air commerce, but concedes that the industry is not exempt from state regulation, as railroads are. TWA has not called to the court's attention any federal statute or regulation that would preempt state workers compensation legislation or provide an exclusive remedy or any remedy for injured air commerce workers. Graff cites *Hammonds v. Freymiller Trucking, Inc.*, 115 N.M. 364, 851 P.2d 486 (Ct. App. 1993), for the principle that an interstate commerce exclusion statute should not be applied

"in the absence of a clear statement from the legislature that it intended to exempt a certain category of employers from application of the Act, or proof that federal legislation governs the rights and liabilities of the parties if an employee engaged in interstate commerce is injured while so employed . . . ." 115 N.M. at 371.

In the present case, we have neither a clear statement from the legislature nor proof of preemptive federal legislation. We conclude 44-506 does not preclude workers compensation coverage for a flight attendant.

Third, Graff takes issue with the Board's conclusion that, in these circumstances, her retirement precludes her from receiving a work disability award. She relies in particular on *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992).

One of the issues in *Brown* was whether Brown's receipt of firefighter's retirement and pension benefits precluded him from receiving workers compensation benefits for permanent partial general disability. The employer argued that the injured worker was not eligible for a work disability because he had removed himself from the labor market, as defined by K.S.A. 1991 Supp. 44-510e(a),

by voluntarily retiring. The portion of the statute relied on by the employer stated:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the employee to perform work in the open labor market and to earn comparable wages has been reduced, taking into consideration the employee's education, training, experience and capacity for rehabilitation, except that in any event the extent of permanent partial general disability shall not be less than percentage of functional impairment." K.S.A. 1991 Supp. 44-510e(a).

Noting that distinguishing between temporary and permanent disability benefits was consistent with the Kansas statutory scheme, the Court of Appeals held that voluntary retirement does not affect permanent partial general disability benefits because they are measured by claimant's loss of abilities rather than lost wages. This court denied review. The Court of Appeals did not reach the question of temporary partial general disability benefits, but expressed the view that voluntary retirement probably would preclude recovery because those benefits were based on actual wages lost. 17 Kan. App. 2d at 77.

When *Brown* was decided, actual wage loss was a factor only in measuring temporary disability compensation. *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 805, 975 P.2d 807 (1998). In 1993, the Kansas Legislature added the factor of actual wage loss to the formula for measuring permanent disability compensation. 25 Kan. App. 2d at 802-03 (quoting 44-510e[a]). In *Gadberry*, the employer argued that the 1993 amendment should bar recovery of permanent disability benefits where a claimant retired. The Court of Appeals disagreed. It looked to K.S.A. 44-501(h) and another provision of 44-510e(a):

"However, K.S.A. 44-501(h), which was enacted subsequent to *Brown*, provides for an offset to employers for retirement benefits:

'If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the

federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment.'

"In addition, K.S.A. 44-510e(a) provides an objective determination of wage loss—the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker was earning after the injury. The plain language of K.S.A. 44-510e(a) does not set out any exceptions to the mathematical calculations. When considering the Workers Compensation Act as a whole, no preclusion of wage loss due to retirement is required under K.S.A. 44-510e(a) because K.S.A. 44-501(h) provides for an offset to the employer if the worker is receiving employer-provided retirement benefits." 25 Kan. App. 2d at 806.

In the present case, the Board made its decision before the opinion in *Gadberry* was filed. The Board distinguished *Brown* because it considered "the circumstances in this case to be significantly different. Here the record does not support a conclusion that claimant could not have returned to work for respondent at a comparable wage." In *Brown*, the Court of Appeals reviewed cases from states where eligibility for disability benefits depended on whether retirement was on account of the disability or was for other reasons. 17 Kan. App. 2d at 75-76. As we have seen, rather than making the reasons for retirement the touchstone, the Court of Appeals settled on the type of disability—temporary or permanent.

The Board distinguished this case from *Brown* because the record does not show that claimant could not have returned to work. The Board thus concluded that Graff failed to show that she had a work disability. We disagree.

The Board found, and it was not disputed, that Graff developed bilateral carpal tunnel syndrome caused by her activities as a flight attendant. Graff testified that she could not do the flight attendant work now or at the time she retired. In *Conner v. M & M Packing Co.*, 166 Kan. 98, 199 P.2d 458 (1948), the appellants contended that the evidence was insufficient to show claimant suffered any disability. The evidence consisted of the testimony of claimant, his wife, and his mother. The appellants' contention was based on the absence of medical evidence to support a finding of total disability. The court rejected the appellants' contention, stating: "This court

has expressly held in repeated decisions that in this state, unlike some states, it is not essential that duration of disability *or incapacity* of an injured workman be established by medical testimony. [Citations omitted.]" 166 Kan. at 100.

In *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 3, 547 P.2d 751 (1976), this court held: "The existence, nature and extent of the disability of an injured workman is a question of fact. Medical testimony is not essential to the establishment of these facts and it is not necessary that a workman's disability be given a medical name or label."

In *Armstrong v. City of Wichita*, 21 Kan. App. 2d 750, Syl. ¶ 2, 907 P.2d 923 (1995), *rev. denied* 259 Kan. 927 (1996), the Court of Appeals extended this ruling to include claims for disability from an occupational disease: "The existence, nature, and extent of the disability of a worker suffering from an occupational disease is a question of fact. It is not necessary that a worker's occupational disease have a given medical name or label in order to be compensable." Medical evidence is not essential or necessary to establish the existence, nature, and extent of a worker's injury. Here, Graff's testimony was sufficient to support an award. The effect of her retirement benefits on her award is governed by K.S.A. 1998 Supp. 44-501(h), which provides a formula for reducing compensation benefits by an amount based on the amount of the retirement benefits.

We reverse the Board and reinstate the ALJ's decision, subject to the Board's determining on remand what, if any, offset TWA is entitled to pursuant to K.S.A. 1998 Supp. 44-501(h).

Reversed and remanded with directions.