(53 P.3d 1242)
No. 87,746

DAVID SHIELDS, *Claimant/Appellant,* v. K.A.T. TRANSPORTATION, *Respondent/Appellee,* and ACE-USA, *Insurance Carrier/ Appellee.*

Opinion filed September 20, 2002.

*J. Joseph Seiwert,* of Snider & Seiwert, L.L.C., of Wichita, for appellant.

*Vincent A. Burnett* and *Gary K. Albin,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees.

Before ELLIOTT, P.J., GERNON and MARQUARDT, JJ.

MARQUARDT, J.: David Shields appeals the decision of the Workers Compensation Board (Board), which found that Shields, K.A.T. Transportation (K.A.T.), and ACE-USA were not subject to the Kansas Workers Compensation Act (Act). We affirm.

While Shields was in Wichita, Kansas, on February 10, 2000, he was informed by telephone that he was hired as a long-haul truck driver by K.A.T., a Chesterton, Indiana, trucking company.

Shields began orientation on February 14, 2000, in Indiana. During orientation, he signed various agreements that stated all

disputes with K.A.T. would be resolved under Indiana law, including workers compensation claims.

On November 24, 2000, after unloading boxes in Ohio, Shields experienced pain in his back and neck. The following morning, he experienced more pain in his back and tingling in his left arm. After Shields spoke with K.A.T. representatives, he visited an emergency room in Indiana. Shields' problem was diagnosed as a pinched nerve or dislocated disk in his neck. Tylenol and steroids were prescribed.

Shields drove to Wichita and saw Dr. Scott Rees on December 1, 2000. Rees diagnosed Shields as having a degeneration and spurring of a spinal cord disk. He prescribed medication and informed Shields not to drive while on the medication. At K.A.T.'s request, Shields drove the truck back to Indiana and he returned to Kansas by train.

Shields filed an application for a workers compensation hearing, claiming that he had an injury to his back and neck on or about November 24, 2000, and "each day worked thereafter" from repetitive overuse and truck driving. He testified that he had been driving trucks for 25 years and would occasionally experience soreness after driving for long periods of time. He always worked through this discomfort without visiting a doctor. He testified that he had experienced soreness in his back 2 weeks prior to the injury in Ohio. He testified that he informed a K.A.T. employee after the injury that his back had been sore for a couple of weeks. Shields was taken off work on December 1, 2000.

K.A.T. claimed that Kansas was without jurisdiction to consider his claim because Shields had agreed to Indiana jurisdiction for workers compensation claims. K.A.T. argued that Shields' alleged injury occurred outside of Kansas and his employment contract was entered into outside of Kansas. Finally, K.A.T. claimed that even if Shields' injury occurred in Kansas, the election of Indiana law precluded Kansas from exercising jurisdiction of the claim.

Shields argued that his injury occurred in Kansas through years of driving trucks, specifically while finishing his duties for K.A.T., and that Kansas has jurisdiction of his claim because his employment contract was entered into in Kansas.

The administrative law judge (ALJ) found that Shields had selected Indiana as the forum for resolving workers compensation claims and that his injury was sustained outside the state of Kansas. Therefore, Kansas did not have jurisdiction of his claim.

Shields appealed the ALJ's decision to the Board. The Board agreed that Shields' employment contract was made in Kansas when Shields accepted the job offer on the telephone. The Board found that Shields' injury occurred in Ohio while unloading his truck. The Board then found that Shields voluntarily signed agreements wherein he agreed that Indiana workers compensation laws would apply to the settlement of any claim arising out of a job-related injury. The Board concluded that the parties were not subject to Kansas workers compensation laws. Shields appeals.

Shields claims that his injury occurred in Kansas. The Board's decision regarding the place of injury represents a factual finding. The determination of whether the Board's factual findings are supported by substantial competent evidence is a question of law. An appellate court is to review the evidence in the light most favorable to the prevailing party below. *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

The Board also found that Shields failed to prove he was injured further while driving back to Kansas. That finding should be affirmed absent proof of an arbitrary disregard of undisputed evidence or an extrinsic consideration such as bias, passion, or prejudice. *Griffin*, 268 Kan. at 34.

K.S.A. 44-506 provides that the Act shall apply to injuries sustained outside the state when the contract of employment was made within the state, unless such contract otherwise specifically provides. Shields claims that the injury occurred in Kansas and the contract provisions electing Indiana law are insufficient to deprive Kansas of jurisdiction.

Even though the Board found that the employment contract was made in Kansas, on appeal, K.A.T. briefly attempts to argue that the contract was not actually made until Shields took a physical examination and drug test and complete orientation in Indiana. However, K.A.T. did not cross-appeal this issue; therefore, the Board's finding on this issue is final.

Shields testified that he had not been working as hard during the 2 weeks prior to his injury due to soreness in his back. He could not point to a specific time and place the injury occurred. He also testified that he would not usually be sore from loading or unloading a truck.

Linda Payton, K.A.T.'s insurance administrator and claims coordinator, stated in an affidavit that Shields informed her he did not believe his injuries were caused by the job but were the result of years of driving trucks. Shields argues that his injury should be classified as a repetitive use or degenerative type of injury and, therefore, his claim should be considered under *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 227, 885 P.2d 1261 (1994), where the claimant's injury was deemed to have occurred on the last day he worked. Shields argues that the place of the last day worked becomes the place of injury. Here, part of Shields' last day of work occurred in Kansas.

In *Berry*, this court addressed the problem of assigning a date of injury to a claimant suffering from carpal tunnel syndrome. In attempting to determine whether carpal tunnel is an occupational disease or an accidental injury, the court determined that carpal tunnel is caused by repetitive trauma over a long period of time. The court stated: "While it is true that it is caused by trauma and thereby fits the definition of an 'injury caused by accident,' it is nonetheless a condition that defies any attempt to affix the precise date the accident occurred." 20 Kan. App. 2d at 229. To simplify the process of determining a date of injury, the court adopted a rule that "the date from which compensation flows is the last date worked by the claimant." 20 Kan. App. 2d at 229-30.

Shields also cites *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999), for the proposition that injuries suffered as the result of micro-traumas leading to increasing pain are also subject to the "last day worked" rule. Shields also cites *Graff v. Trans World Airlines*, 267 Kan. 854, 983 P.2d 258 (1999), which states that "[w]here a repetitive trauma injury is caused or aggravated by work activities, some of which occurred in Kansas, the injury is compensable under the Act." 267 Kan. at 859. Shields claims that these cases support his argument that his injury oc-

curred in Kansas and, therefore, is compensable under the Kansas workers compensation statutes.

Shields ignores the evidence that his injury occurred when he was unloading boxes in Ohio, and his previous soreness and pain through years of truck driving seemingly did not affect his ability to work. His argument under *Graff* does not recognize the fact that he signed an agreement which stated all disputes with K.A.T., including workers compensation claims, would be resolved under Indiana law.

Dr. Rees' notes indicate that Shields first experienced a sharp, stabbing pain at the base of his neck on November 8, 2000, while lifting heavy boxes. The pain lasted for a few days. Shields had previously visited Dr. Jack L. St. Clair on November 28, 2000, and complained of this same incident that occurred approximately 3 weeks earlier.

Shields' own testimony fails to mention this previous incident of pain after lifting boxes. He testified that he experienced soreness and stiffness over the years after driving long distances, but the pain was different from what he experienced in the present case. He also testified that he had been sore for 2 weeks and had not been driving as many miles. Shields testified that the doctor informed him the spurring in his neck was due to years of driving a truck, but a review of the record on appeal does not reveal the cause of the spurring.

The question before this panel is whether the Board's determination that Shields' injury occurred in Ohio is supported by substantial competent evidence. There is evidence in the record on appeal that Shields had been suffering from soreness through the years he worked as a truck driver. The record as a whole could have led the Board to determine that Shields suffered some sort of injury due to the repetitive nature of his job. However, the question is not whether the record supports a contrary view, but whether it supports the findings made by the Board.

Shields testified that he felt it was necessary to seek medical treatment due to the tingling in his arm and the pain in his neck. Without medical testimony in the record on appeal to establish a claim that the injury was simply the culmination of years of truck

driving, there is no independent medical verification of Shields' claim.

There is substantial competent evidence to support the Board's finding that Shields was injured in Ohio.

Shields argues that since the contract was formed in Kansas, the provisions he agreed to after arriving in Indiana constituted an improper attempt by K.A.T. to modify the contract. An analysis of K.S.A. 44-506 and the agreements signed by Shields are subject to an unlimited review by this court. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

K.S.A. 44-506 states:

> "The workmen's compensation act shall not be construed to apply to business or employment which, according to law, is so engaged in interstate commerce as to be not subject to the legislative power of the state, nor to persons injured while they are so engaged: *Provided,* That the workmen's compensation act shall apply also to injuries sustained outside the state where: (1) The principal place of employment is within the state; or (2) the contract of employment was made within the state, unless such contract otherwise specifically provides . . . ."

K.A.T. was a carrier that operated in 11 states and engaged in interstate commerce. Shields testified that he had driven through all 11 states. K.S.A. 44-506 grants Kansas jurisdiction in such a case, unless the employment contract provides otherwise.

Shields argues that since his contract was created in Kansas, the language in K.S.A. 44-506(2) permits an employment contract to provide for workers compensation coverage in other jurisdictions if "such contract otherwise specifically provides." Shields argues: "Thus it follows that a contract term that eliminates the coverage of the Kansas Workers Compensation Act and substitutes the coverage of another state must be made in Kansas to be effective . . . ."

Shields signed a variety of documents while he was at orientation in Indiana. One document was an agreement containing, in part, the following language:

> "2. The laws of the state of Indiana, including the Indiana Workers' Compensation Act and its benefits, shall apply to the settlement of any claim arising out of any job related death, injury or illness of the Employee.

"3. The Employee voluntarily elects and agrees to this method of settlement regardless of his or her state of residence or regardless of which state or country such accident may occur."

This agreement was signed by Shields and a safety training supervisor for K.A.T.

Shields also signed a driver agreement, which provided that the agreement was "entered into and will be interpreted under the laws of the State of Indiana. DRIVER specifically agrees that Indiana will be the legal forum for all disputes, including worker's compensation claims arising out of the employment relationship."

Finally, Shields signed a document entitled "Agreement to Select a State Other Than Ohio as the State of Exclusive Remedy." This document listed Indiana as the state of exclusive remedy in a workers compensation action.

In *Shehane v. Station Casino*, 27 Kan. App. 2d 257, 3 P.3d 551 (2000), a claimant entered into an employment contract in Kansas to work as a performer for Station Casino in Missouri. The performer agreement signed by both parties provided that its terms and provisions were to be governed by Missouri law. Station Casino argued that the Kansas Workers Compensation Act did not apply to claimant's action.

This court determined that the claim was not controlled by Missouri law because the agreement's generic choice of law provision did not specifically provide that Missouri law would cover workers compensation claims and, therefore, did not meet the specificity requirement found in K.S.A. 44-506(2). In so finding, the court looked to K.S.A. 44-501(g), which states that the Act is to be liberally construed to bring employers and employees within its provisions to provide its protection to both. 27 Kan. App. 2d at 263.

The present case does not involve one agreement containing a generic choice of law provision. Rather, it involves several documents voluntarily signed by Shields which provide that workers compensation claims were to be settled according to Indiana law. The only logical interpretation of these documents is that Shields was agreeing to submit to jurisdiction in Indiana for the settlement of such claims.

Shields argues that the documents he signed in Indiana were not part of the original employment contract, but were modifications not contemplated by the Kansas oral contract. As K.A.T. mentions in its brief, the court in *Shehane* seems to address this point indirectly. In rejecting Station Casino's argument that Missouri law controlled under the contract, the court appeared to say that had the agreement been more specific, Missouri law may have controlled the claim.

An oral employment contract reached between parties during a telephone call may be modified by subsequent written contracts between the parties. Shields has cited no authority that renders the voluntary agreements meaningless or without force and effect. They are part of the contract as a whole, and Shields could not have believed that when he accepted the job by telephone, no further discussion regarding specifics of the job would be necessary. The agreements are binding on Shields and vest jurisdiction over this action in Indiana.

Shields also raises the argument that the agreements are void because they required him to select workers compensation protection from a state other than Kansas. In support, he cites K.S.A. 44-543(b), which states, in part: "Any contract in which an employer requires of an employee as a condition of employment that the employee elect not to come within the provisions of the workers compensation act, shall be void." This language appears in a subsection dealing with employees who own 10% or more of the outstanding stock of a corporate employer, and prohibiting such employees from contracting out of workers compensation protection. In the present case, Shields did not contract out of protection, but simply chose that of another jurisdiction. K.S.A. 44-543(b) is inapplicable to this case.

Finally, Shields claims that the agreements executed in Indiana are ineffective by their terms. He argues that only K.A.T.'s president could enter into an employment contract, the documents pertained only to the settlement of a claim and not to other resolutions, and documents necessary to make the agreements enforceable were not attached and filed as required.

These claims lack merit. Shields testified that he was never contacted by the president of the company, and the signed agreements do not bear the signature of anyone claiming to be K.A.T.'s president. However, there is no evidence in the record on appeal regarding whether K.A.T.'s company policies permitted the president to designate other employees to enter into employment contracts or sign related documents. Without specific information regarding K.A.T.'s hiring policies, this panel cannot determine whether any violations occurred that would render the agreements unenforceable.

The same reasoning applies to Shields' argument that the agreement to select Indiana as the state of exclusive remedy is unenforceable because required certificates of coverage were not attached and filed with the state. Shields claims that no such certificates were filed, and no certificates appear in the record on appeal, but it is impossible to tell from the record on appeal whether they were actually attached or filed with the State of Indiana.

Further, Shields' argument that one of the agreements provides for Indiana law to control only the settlement or method of settlement, and not all possible resolutions, is equally without merit. The language of all the agreements read together clearly illustrates that any workers compensation actions were to be resolved under Indiana jurisdiction, and the selected language does not anticipate submitting the claim to Indiana jurisdiction only in the case of a legal settlement.

Affirmed.