No. 46,042

GARVIN LEE ODELL, Claimant, *Appellant,* v. UNIFIED SCHOOL DIS-
TRICT No. 259 *Respondent,*

and

NEWARK INSURANCE COMPANY, *Insurance Carrier,* Appellees.

(481 P. 2d 974)

Opinion filed March 6, 1971.

*Otto J. Koerner,* of Wichita, argued the cause, and *G. E. Carnahan,* of
Wichita, was with him on the brief for the appellant.

*Roger Sherwood,* of Kahrs, Nelson, Fanning, Hite and Kellogg, Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This is a workmen's compensation case wherein the employee, Garvin Lee Odell, claims loss of vision in his right eye as the result of an accident occurring October 18, 1965. Compensation was denied by the examiner, director, and district court, and claimant has appealed.

Two questions are presented: (1) Was claim for compensation timely filed? and (2) Did the district court err in considering only the medical testimony in making its determination there was no causal connection between claimant's loss of vision and the accident of October 18, 1965?

The evidence discloses claimant was employed by Unified School District No. 259 as chief engineer at West High School in Wichita. While working on the job he sustained three separate injuries involving his eyes. The first injury occurred October 18, 1965, when he was walking through a tunnel and struck his head on a pipe, resulting in a lump and abrasion above his right eye. He was given first-aid treatment by the school nurse. The next day claimant commenced seeing spots, or floaters, in his eye. He telephoned his doctor, explained what had happened, and was advised that he was having a "sort of floating vision" which, normally, would clear up in a few days. On January 31, 1966, claimant got some boiler compound in his eyes and was treated at a hospital as an out-patient for caustic burns. After this occurrence, the spots, or floaters, in his eye seemed to be larger. Finally, on Friday, May 27, 1966, a small piece of wire or rust became lodged in claimant's right eye when he was using a steel brush in his work. The object was removed by the school nurse. During the Memorial Day weekend, claimant completely lost the vision of his eye. He immediately consulted Dr. Jack Weaver, an ophthalmologist, who diagnosed his condition as a retinal separation and referred him to Dr. James T. Robison, Jr., an ophthalmologist and surgeon at the University of Kansas Medical Center. Dr. Robison confirmed the diagnosis and operated the eye June 7. The operation not being successful, the eye was reoperated June 14. Claimant was dismissed from the hospital June 19, and Dr. Robison last saw him December 19, at which time he classified the condition of claimant's eye as "industrial blindness."

Mr. Millikan, claimant's immediate supervisor, was aware of each of the three accidents at the time or shortly after they occurred but did not report the accident of October 18, 1965, to his employer inasmuch as he "assumed it was taken care of at the school." A report of the January 31 accident was received in the employer's personnel office on the day of its occurrence. The accident which occurred May 27 was reported May 31 to the employer, who in turn filed a "Report of Accident" with the workmen's compensation director June 7.

Before going to Dr. Robison, claimant gave a written statement June 3 to Jack Noll, an adjuster for the respondent insurance carrier, in which he told about the injury to his right eye on May 27, as well as the two earlier injuries. He stated that he seemed to have had trouble with his eye since running into the pipe in October. Thereupon, the adjuster authorized treatment by Dr. Robison, and the insurance carrier commenced paying compensation for temporary total disability as of June 4, 1966. Each of the drafts issued to claimant for disability benefits showed the accident date on the face of the draft to be May 27, 1966. During the summer of 1966 the insurance carrier continued paying weekly benefits and medical expenses incurred by claimant.

On August 16, Mr. Noll wrote Dr. Robison enclosing a copy of claimant's statement given June 3 and inquired whether the surgery performed was "a direct result and required because of the incidents" described in the statement. Dr. Robison responded by letter dated September 8 advising that the injury of May 27 had absolutely nothing to do with the retinal detachment. He stated, however, the injury received in October, although remote in time, might conceivably have been a precipitating event leading to the detachment. On September 16, Mr. Noll forwarded a copy of Dr. Robison's letter to claimant. After receiving the doctor's letter, the insurance carrier declined to make further payments of compensation or medical expenses. Payments for temporary total disability were concluded as of September 6, 1966, when claimant returned to work.

Apparently, on the theory his employer may not have had knowledge of the October accident, claimant verbally reported it to his employer's personnel office September 19, 1966, and the employer's "Report of Accident" was filed with the workmen's compensation director September 23. Written claim for compensa-

tion for the October 18, 1965, accident was filed (or served) on the employer January 10, 1967, and the following day claimant filed his application for hearing with the director.

After hearing all the evidence, the examiner found, in substance, that (1) the three accidents involving injury to claimant's eye arose out of and in the course of his employment, (2) the employer had notice of all three accidents as required by law, (3) medical expenses were paid by the insurance carrier for the accident of May 27, 1966, and not for the October 18, 1965, accident, (4) written claim for the October accident was not filed in time, and (5) an award should be entered denying compensation. Upon review by the director, the examiner's award was sustained. The district court, on appeal, adopted the findings of the examiner and affirmed the director's order.

The finding that the employer had notice of all three accidents as required by law has not been challenged. The record discloses Mr. Millikan, claimant's supervisor, had knowledge of the October accident within three or four days after it occurred. Knowledge of the accident by the employer, or his duly authorized agent, or notice to the employer within ten days of the accident is all that is required by K. S. A. 44-520. Notice to an immediate supervisor constitutes notice to the employer. (*Phillips v. Helm's Inc.*, 201 Kan. 69, 439 P. 2d 119.)

Notwithstanding timely notice of the injury, the employer did not file a report of the accident with the workmen's compensation director until September 23, 1966, long past the seven-day requirement of K. S. A. (now 1970 Supp.) 44-557. In such case, the time for filing a claim (commencing proceedings before the director) was extended to one year from date of the accident, or last payment of compensation. (*Riedel v. Gage Plumbing and Heating Co.*, 202 Kan. 538, 449 P. 2d 521; *Magers v. Martin Marietta Corporation*, 193 Kan. 137, 392 P. 2d 148; *Asp v. McPherson County Highway Dept.*, 192 Kan. 444, 388 P. 2d 652; *Ricker v. Yellow Transit Freight Lines, Inc.*, 191 Kan. 151, 379 P. 2d 279; *Kronig v. Nolan Motor Co.*, 186 Kan. 534, 351 P. 2d 1; *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P. 2d 235.) A proceeding for workmen's compensation is commenced when the workman serves notice upon the employer of his claim for compensation. (*Ricker v. Yellow Transit Freight Lines, Inc.*, supra.)

While we have held that the question of whether a claim for

compensation has been filed within the time fixed by statute is primarily one of fact (*Riedel v. Gage Plumbing and Heating Co.,* supra), such is not the case here, where the facts are undisputed. (*Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P. 2d 172.) Claimant began receiving compensation for temporary total disability June 4, 1966—prior to expiration of one year from date of the October accident. He received benefits and was furnished medical treatment until September 6, 1966. It is conceded that not until Dr. Robison's letter of September 8, 1966, did claimant or respondents learn that there was a possible causal relation between the retinal detachment and the October accident.

Claimant contends that within the factual context presented, his written claim for compensation filed January 10, 1967, was timely—within one year after the last payment of compensation. Respondents, on the other hand, contend that since compensation and medical expenses were paid on the May accident by mistake, the claim, not having been filed by October 18, 1966 (one year after date of the accident), was barred.

Although a case precisely in point has not been found, we believe that claimant's position is sound, and that proceedings for compensation were commenced within the time required by K.S.A. 44-557.

This court is firmly committed to the rule that the provisions of the workmen's compensation act are to be liberally construed in favor of the workmen and compensation awarded where it is reasonably possible to do so. By failing to file a report of the October accident within the time prescribed by K. S. A. 44-557, the employer set in motion the one-year time limitation provided in the statute for commencement of proceedings. During the limitation period, claimant made full disclosure of all three accidents involving injury to his eye. He made clear to Mr. Noll, the adjuster, that the blow to his head in October marked the onset of his eye problem, and his symptoms continued until the retinal detachment was diagnosed by Dr. Weaver in May 1966, after the third accident. Without making any effort to determine whether the retinal detachment was related to any particular one of the three accidents, the insurance carrier began paying compensation and furnishing medical treatment. The only employer's accident report on file at the time was that pertaining to the May injury. Obviously, compensation and medical expenses were paid by the carrier through the summer of 1966 upon

the belief that the retinal detachment was in some way related to the May accident.

We should note that had the employer filed an accident report for the October accident within the time prescribed by K. S. A. 44-557, a claim for compensation thereon would have to have been filed within 180 days after the accident; otherwise, it would have been barred. (K. S. A. 44-520a). In such case, the right to file a written claim would not have been revived by subsequent payment of compensation or the furnishing of medical treatment. (*Rutledge v. Sandlin,* 181 Kan. 369, 310 P. 2d 950.) The situation here, however, differs in that employer's accident report was not timely filed and compensation began and medical treatment furnished during the one-year limitation period provided by statute. Although it later developed the injury for which payments were made was not attributable to the May accident, but instead may have been related to the October accident, we do not believe, on that basis, claimant should be denied his right to file a claim within the time allowed after compensation and medical payments ceased. Claimant had the right to rely on the insurance carrier's action and was relieved of filing a claim during the time he received compensation and medical treatment. (See, *Johnson v. Skelly Oil Co.,* supra.) Under the circumstances, the fact that compensation was paid for the wrong accident cannot be taken advantage of by respondents to restrict the limitation period for filing a claim to one year from the date of the accident.

We therefore hold that the district court erred in finding written claim for compensation was not timely filed.

The second question for our consideration pertains to the district court's finding:

". . . [T]he *medical testimony* failed to establish that claimant's loss of sight was related to the accident of October 18, 1965."

As previously indicated, the examiner found that the three accidents involving injury to claimant's eye arose out of and in the course of his employment.

Under the settled law of this state, the claimant had the burden of proving that the injury complained of arose out of his employment; that is, there must be some causal connection between his loss of vision and the accident of October 18, 1965, which admittedly occurred in the course of his employment. (*Meyers v. Consolidated*

*Printing & Stationery Co.,* 201 Kan. 806, 443 P. 2d 319; *Lyon v. Wilson,* 201 Kan. 768, 443 P. 2d 314; *Hanna v. Edward Gray Corporation,* 197 Kan. 793, 421 P. 2d 205; *Jacobs v. Goodyear Tire & Rubber Co.,* 196 Kan. 613, 412 P. 2d 986.) An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. (*Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796 and cases therein cited.) An accidental injury is compensable even where the accident only serves to aggravate a pre-existing condition. (5 Hatcher's Digest, Workmen's Compensation § 16.)

As we view the finding of the lower court, the inference is that only the medical testimony was considered in resolving the question. Dr. Robison testified that in his opinion the blow sustained by the claimant in October could have been a precipitating force leading to a retinal tear in an eye that was predisposed with degenerative changes to have such a thing occur, but that the blow itself was not sufficient to have produced the tear. The doctor stated that most retinal detachments or tears are not caused by trauma. He further acknowledged that while the blow may have been a precipitating factor, by the same token, it may not have been. Dr. Weaver, who testified for respondents, stated that claimant's myopia or near-sightedness made him more susceptible to having a retinal separation, and such separations are usually caused by degenerative changes. In Dr. Weaver's opinion, claimant's retinal separation was probably not due to the blow to his head. Both doctors tended to agree that there was no test or examination in the field of medicine that would determine whether or not the tear or separation could have been caused by the trauma.

We have said that a trial court, or a fact-finding body, in determining factual issues such as whether the injury arose out of the employment, is not required to limit its consideration to the testimony of expert medical witnesses, but may consider lay testimony in the case as well. (*Lyon v. Wilson,* supra; *Mooney v. Harrison,* 199 Kan. 162, 427 P. 2d 457; *Hanna v. Edward Gray Corporation,* supra. See, *Mein v. Meade County,* 197 Kan. 810, 421 P. 2d 177.) By the same token, we are of the opinion that where, as in this case, the testimony of the doctors was arguably uncertain and inconclusive, it was error for the district court to have looked solely to

the medical evidence in making its factual determination. For that matter, circumstantial evidence also may properly be considered in determining whether or not a claim has been established. (*Hardwell v. St. Louis S. & R. Co.*, 146 Kan. 870, 73 P. 2d 1120.)

In the present posture of this case, the district court has before it the complete transcript of the proceedings had before the director, and from the record is authorized to make its own independent adjudication of the facts. Our conclusion that the court erred in considering only the medical testimony on the issue of causation is not to be construed as indicating an opinion one way or the other on the question. Responsibility for resolving that issue lies within the exclusive province of the lower court after reviewing and weighing *all* of the evidence.

The judgment of the district court is reversed and the case remanded with directions to proceed in accordance with the views herein expressed.