(61 P.3d 81)
No. 88,539 ■

WENDELL ANDERSON, *Claimant/Appellee*, v. SCARLETT AUTO INTERIORS, *Respondent/Appellant*, and STATE FARM FIRE & CASUALTY COMPANY, *Insurance Carrier/Appellant.*

Opinion filed October 11, 2002.

*Rex W. Henoch,* of Dorothy & Henoch, LLC, of Lenexa, for appellants.

*L.J. Leatherman,* of Palmer, Leatherman & White, L.L.P., of Topeka, for appellee.

Before RULON, C.J., BEIER, J., and BRAZIL, S.J.

BEIER, J.: Respondent Scarlett Auto Interiors (Scarlett) and its insurance carrier, State Farm Fire and Casualty Company, appeal the Workers Compensation Board's decision that Wendell Anderson's injury arose out of and in the course of his employment at Scarlett.

Anderson testified that he got in and out of automobiles 20 to 30 times a day in the course of installing convertible tops, headliners, and carpets. He sought workers compensation after he was injured entering a Chevrolet Suburban on January 6, 1999. When he had gotten the right half of his body up into the Suburban, Anderson heard a pop in his lower back.

Anderson had received treatment for low back pain as early as 1967 and experienced low back pain off and on throughout most of his adult life. He testified that his back condition could be aggravated by any activity that required him to bend over, stoop, or lift heavy items. Anderson had received chiropractic treatment an average of one to two times per month since approximately De-

cember 1995 for low back pain and right hip problems. Nevertheless, he testified that the Suburban incident intensified his problems and that it caused him to suffer new pain in his right leg. In addition, the chiropractic manipulations that had helped him in the past no longer provided relief from his pain.

The evidence also included expert opinion that Anderson's pain resulted from degenerative conditions not caused by the Suburban incident. However, Dr. Phillip Baker opined that Anderson suffered a 20 percent whole body impairment, 15 percent of which was attributable to the Suburban incident and the treatment it necessitated and 5 percent of which was attributable to preexisting spondylolisthesis.

The appellants' first argument is that the Board erred in "disregarding uncontradicted evidence that claimant's alleged accidental injury did not arise out of and in the course of his employment and was due to a personal risk." They cite K.S.A. 44-508(e), which states in part: "An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or by the normal activities of day-to-day living."

This argument lacks merit. The evidence that Anderson's impairment was due only to his degenerative conditions was not uncontradicted.

First, "[a] claimant's testimony alone is sufficient evidence of his own physical condition." *Hanson v. Logan U.S.D. 326,* 28 Kan. App. 2d 92, 95, 11 P.3d 1184 (2000), *rev. denied* 270 Kan. 898 (2001), and Anderson testified that he heard a pop in his lower back when he entered the Suburban and thereafter suffered intensified pain in his back and new pain in his right leg. This testimony alone was enough to contradict the expert testimony attributing his problems to degenerative conditions alone.

Second, Baker specifically allocated the majority of the impairment rating to the Suburban episode and ensuing treatment of Anderson's back. According to Baker, there was more to Anderson's injury profile than degenerative disease.

Appellants also argue that Baker's report should not have been considered by the Board and should not be considered by this

court. They base this argument on the language of K.S.A. 44-519, which states:

"Except in preliminary hearings conducted under K.S.A. 44-534a and amendments thereto, no report of any examination of any employee by a health care provider, as provided for in the workers compensation act and no certificate issued or given by the health care provider making such examination, shall be competent evidence in any proceeding for the determining or collection of compensation unless supported by the testimony of such health care provider, if this testimony is admissible, and shall not be competent evidence in any case where testimony of such health care provider is not admissible."

Baker never testified. Rather, his report was admitted at the hearing as part of Exhibit 2, an evaluation of Anderson's preinjury task performance abilities generated by Bud Langston, a vocational specialist. Langston's evaluation relied upon and attached a copy of Baker's report.

At the hearing, appellants objected to Exhibit 2 only because Langston's deposition had not yet been taken. The administrative law judge admitted the exhibit, subject to the taking of Langston's deposition. Appellants did not specifically object to Baker's report at that time. They did object at Langston's deposition, but that objection came too late.

Appellants also stipulated at the hearing to the impairment ratings in Baker's report. They made the same stipulation in their first brief to the Board. They now argue these stipulations were intended to be limited in scope.

We confess the record is not clear concerning whether appellants were stipulating only to the impairment ratings themselves and not to the portion of Baker's report that attributed a certain percentage to the Suburban incident and the remaining percentage to Anderson's degenerative conditions. However, the inadequacies of the record must be laid at appellants' feet. See *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001). Because they failed to make a clear record below of the exact nature of their stipulation, their claim of error fails; and they are bound by the stipulation made by themselves or their attorneys. *C.M. Showroom, Inc. v. Boes*, 23 Kan. App. 2d 647, 649, 933 P.2d 793 (1997).

Appellants next question whether substantial competent evidence supported the Board's ruling that Anderson's injury arose out of and in the course of his employment.

"The 1993 amendments to the Workers Compensation Act specifically adopt the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, for workers compensation appeals. K.S.A. 1998 Supp. 44-556. The Workers Compensation Act further states that such review shall be limited to questions of law. K.S.A. 1998 Supp. 44-556(a). The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. In workers compensation cases, substantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing a substantial basis of fact from which the issue tendered can be reasonably resolved. The substantial competent evidence test reviews the evidence in the light most favorable to the prevailing party." *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

The two phrases "arising out of" and "in the course of" used in K.S.A. 44-501

"have separate and distinct meanings; they are conjunctive and each condition must exist before compensation is allowable. The phrase 'in the course of' employment relates to time, place and circumstances under which the accident occurred, and means the injury happened while the workman was at work in his employer's service. The phrase 'out of' the employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment if it arises out of the nature, conditions, obligations and incidents of employment. [Citation omitted.]" *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 197-98, 689 P.2d 837 (1984).

In this case, there can be no serious dispute that Anderson's injury occurred "in the course of" his employment. He was on his employer's premises and doing work for his employer when he entered the Suburban.

The more difficult and interesting question is whether Anderson's injury "arose out of" his employment. The Supreme Court has held there are three general categories of risks in workers compensation cases: "(1) those distinctly associated with the job; (2) risks which are personal to the work[er]; and (3) the so-called neutral risks which have no particular employment or personal character." *Hensley v. Carl Graham Glass*, 226 Kan. 256, 258, 597 P.2d

641 (1979). "Only those risks falling in the first category are universally compensable; personal risks do not arise out of the employment and are not compensable." *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 299, 615 P.2d 168 (1980).

Appellants argue Anderson's injury did not "arise out of" his employment because it was due to the personal risk associated either with natural aging or the normal activity of entering automobiles. Appellants support this argument with the expert testimony on the causal relationship between Anderson's degenerative conditions and his injury, as well as the language of K.S.A. 44-508(e). This statute says injuries resulting from the natural aging process or day-to-day activities are not compensable.

Appellants use *Martin*, 5 Kan. App. 2d 298, and *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P.2d 625 (1972), to illustrate their point.

In *Martin*, the claimant suffered from a long history of back problems. One day when claimant arrived at the parking lot of his employer and got out of his vehicle, he suffered a back injury. The court held that, before an injury can be considered to "arise out of" employment, there must be a causal connection between the conditions under which work is performed and the injury. 5 Kan. App. 2d at 299. "Before an injury can be said to arise out of the employment, the risk must be incidental to the work. A risk is incidental to the employment when it belongs to or is connected with what the workman has to do in fulfilling his duties." 5 Kan. App. 2d at 299-300. The *Martin* panel held that the risk involved in that case was not associated with the claimant's employment and there were no intervening or contributing causes for the accident. 5 Kan. App. 2d at 300. Further, the fact that the claimant's back problems could be aggravated by almost any everyday activity bolstered the conclusion that the injury suffered was the result of a personal risk and not compensable. 5 Kan. App. 2d at 300.

In *Boeckmann*, the claimant suffered from a degenerative condition in both hips. He underwent surgery to repair the left hip condition, and 3 years later noticed that pain in his right hip was worsening. The claimant also began suffering incidents of disabling back pain while at work, was examined by a doctor, and was in-

structed not to return to work because his hips had deteriorated to the point that he was no longer able to do the tasks required by his job. The court denied compensation because the claimant's condition could not be traced to any stress, strain, or unusual exertion in the workplace. 210 Kan. at 739. Instead, everyday activities had eroded the physical fibers of the claimant's structure; any movement would aggravate his condition, regardless if the activity took place on or off the job. 210 Kan. at 739.

Although Anderson's back problems could be aggravated by everyday activities, that fact alone is not controlling.

"Where an employment injury is clearly attributable to a personal (idiopathic) condition of the employee, and no other factors intervene or operate to cause or contribute to the injury, no award is granted. [Citation omitted.] But where an injury results from the concurrence of some preexisting idiopathic condition *and* some hazard of employment, compensation is generally allowed." *Bennett v. Wichita Fence Co.*, 16 Kan. App. 2d 458, 460, 824 P.2d 1001 (1992).

Anderson's situation is distinct from that of the claimants in *Martin* and *Boeckmann,* because his injury followed not only from his personal degenerative conditions but from a hazard of his employment, *i.e.,* the requirement that he constantly enter and exit vehicles. The Kansas Supreme Court has stated that an injury arises out of employment if the injury is fairly traceable to the employment and comes from a hazard the worker would not have been equally exposed to apart from the employment. *Siebert v. Hoch,* 199 Kan. 299, 304, 428 P.2d 825 (1967). If Anderson had not been employed as he was, he would not have been equally exposed to the risk that ultimately caused his injury.

The appellants also argue that the Suburban incident did not qualify as an "accident" because it did not involve any trauma, jerking, or jolting. K.S.A. 44-508(d) defines accident as

"an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment."

It is clear from this definition that a manifestation of force is not necessary for an incident to be deemed an "accident." Furthermore:

"It has long been the rule that injury to a worker by a strain sustained in performing the usual tasks in the usual manner may constitute an accident within the meaning of the worker's compensation act even though there be no outward and discernible force to which the resultant disability can be traced." *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 379, 573 P.2d 1036 (1978).

In addition, "[a]n accidental injury is compensable even where the accident serves only to aggravate a preexisting condition." *Odell v. Unified School District*, 206 Kan. 752, 758, 481 P.2d 974 (1971); see also *Hughes v. Inland Container Corp.*, 247 Kan. 407, 799 P.2d 1011 (1990) (aggravation of preexisting degenerative condition).

Under the governing law, there was substantial competent evidence to support the Board's decision that Anderson's condition arose out of his employment. It resulted from the concurrence of his preexisting personal degenerative conditions and a work-related hazard.

Affirmed.