NOT DESIGNATED FOR PUBLICATION

No. 122,888

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM VAN HORN,
*Appellant/Cross-appellee*,

v.

BLUE SKY SATELLITE SERVICES,

and

PREVISOR INSURANCE CO.,
*Appellees/Cross-appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 23, 2021. Affirmed.

*Roger D. Fincher*, of Fincher Law Office, of Topeka, for appellant/cross-appellee.

*Bruce R. Levine*, of Wiedner & McAuliffe, LTD., of Overland Park, for appellee/cross-appellants.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: William Van Horn appeals the decision of the Kansas Workers Compensation Appeals Board (the Board). He argues that provisions within the Kansas Workers Compensation Act (the Act), specifically K.S.A. 2020 Supp. 44-510d(b)(23)-(24), are facially unconstitutional because they no longer provide an adequate substitute remedy for an injured worker's right to bring a common-law action for the recovery of damages. In 2013, the Act adopted the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (6th ed. 2008) as

1

the guide for measuring the permanent impairment of injured workers. Van Horn contends that this edition reduces workers compensation awards to a level that fails to provide an adequate remedy for injured workers. He also argues a second claim of error which is intertwined with his first. Specifically, that any impairment rating arising from use of the Sixth Edition will not be supported by substantial competent evidence.

Blue Sky Satellite Services and Previsor Insurance Co. (Blue Sky) cross-appeal, arguing that Van Horn's injury is not the type of injury covered by the Act. It is their position that Van Horn sustained his injury during a normal activity which individuals engage in as part of their day-to-day living, rather than a task associated with his employment. They further contend that the Board erred in awarding future medical benefits, temporary total disability benefits, and past medical benefits for that injury.

Because the challenge Van Horn advanced against the specified provisions of the Act was not sufficiently briefed to enable appellate review of his two claims of error, and because he suffered a compensable, work-related injury, the decision of the Board is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Van Horn worked for Blue Sky Satellite Services as a satellite dish installation technician. In that capacity, Van Horn installed satellite dishes and conducted service calls in the homes of customers, which required him to climb stairs and ladders, as well as onto roofs. Van Horn weighed around 256 pounds and was required to wear a tool belt which weighed between 30-45 pounds. On March 15, 2018, Van Horn was ascending stairs in a customer's home when he heard and felt a pop in his left knee followed by immediate exquisite pain. Van Horn called his employer to say that he could not complete the customer's service call, and Blue Sky directed him to go to an urgent care facility.

2

Following his urgent care visit, Van Horn saw an orthopedic surgeon. An MRI revealed a medial meniscus tear, as well as degenerative changes in the knee. Dr. William Jones performed a partial medial meniscectomy with chondroplasty, in all three compartments of Van Horn's left knee, and also conducted a technique designed to simulate scar tissue formation. In his operative report, Dr. Jones noted arthritic changes throughout Van Horn's knee.

Van Horn did not work from the date of the accident on March 15, 2018, through June 21, 2018, when Dr. Jones released him to full duty with no restrictions. Once Dr. Jones released Van Horn, the doctor was of the opinion that Van Horn had achieved maximum medical improvement. Therefore, Jones did not schedule any other appointments for Van Horn and did not instruct him to return for a follow-up visit.

A hearing before an administrative law judge (ALJ) followed Van Horn's recuperation. During that hearing, Van Horn testified that he did not seek any further treatment and he had returned to his previous job, full-time, with no restrictions. Van Horn stated that his knee had not returned to what it was before the injury, but the surgery Dr. Jones performed resulted in an improvement from the injury. Van Horn also testified that he occasionally still experiences swelling in the left knee, accompanied by a degree of localized pain. Van Horn acknowledged that he had not suffered a loss of movement in his knee as a product of his injury.

Two medical experts provided testimony for the ALJ through depositions: Daniel D. Zimmerman, M.D., on behalf of Van Horn, and Thomas S. Samuelson, M.D., on behalf of Blue Sky. Dr. Zimmerman concluded that Van Horn sustained a permanent impairment to his left knee and rated his impairment twice, using the Fourth (4th ed. 1995) and Sixth Edition (6th ed. 2008) of the American Medical Association Guides to the Evaluation of Permanent Impairment. Dr. Zimmerman rated Van Horn's impairment at 20% under the Fourth Edition and 3% under the Sixth Edition.

Dr. Zimmerman practices internal medicine and is not a surgeon or an orthopedic doctor. He has also never performed or billed for the surgery that Van Horn underwent. But reviewing bills was part of his job as a district medical advisor for the Department of Labor for 28 years. He reviewed Van Horn's medical bills for roughly 10 minutes on the morning that he testified. He could not say whether Kansas was a medical fee schedule state and did not check Van Horn's medical bills against the fee schedule.

Dr. Zimmerman explained that his 3% rating under the Sixth Edition of the AMA Guides was arrived at by using the 2% default presumed rating for Van Horn's diagnosis and adding a 1% grade modifier. The modifier was intended to address grating and chondromalacia, or cartilage damage, that he detected in Van Horn's knee during his examination, as well as the pain the patient exhibited during that visit. Dr. Zimmerman could only say that the chondromalacia was present when he examined Van Horn's knee. He did not know whether the accident caused the chondromalacia.

Dr. Zimmerman also testified that Van Horn could bend his knee to a normal position, but that extension was impaired, in that Van Horn was unable to fully straighten his leg. Dr. Zimmerman stated that Van Horn would need future medical treatment, including steroid injections, medication, and possibly viscosupplementation. Additionally, he advised that Van Horn should adhere to permanent work restrictions.

Dr. Samuelson rated Van Horn's impairment at 2% under both AMA Guides. Dr. Samuelson is an orthopedic surgeon who performs knee operations several times a year, including the surgery Van Horn underwent. He testified that Van Horn's meniscus tear was a complex tear, which is common when an arthritic process or degenerative changes are already present. Dr. Samuelson stated that he could not identify a specific injury. Rather, he questioned whether Van Horn's issue stemmed from simple fatigue of degenerative tissue. According to Dr. Samuelson, the meniscus pathology could have also been present before the injury and simply been aggravated along with arthritis. It was Dr.

4

Samuelson's opinion that the exact source of Van Horn's pathology was difficult to determine without the occurrence of a specific event.

Dr. Samuelson testified that when he evaluated Van Horn on September 4, 2018, he did not detect any diminished range of motion in the left knee, and that the significant degenerative changes in Van Horn's knee were likely the source of his residual pain. According to Samuelson, when Van Horn had his surgery on May 1, 2018, the degenerative changes were already "fairly advanced," meaning the degeneration was "clearly pre-existing." Thus, it was Dr. Samuelson's opinion that the incident involving Van Horn's knee could have easily happened while walking at home or some other nonoccupational activity; it was not connected to his work activity. Dr. Samuelson did not believe future medical treatment relative to the incident would be necessary, but that further degenerative changes to Van Horn's knee could require additional treatment.

In December 2019, the ALJ ruled that Van Horn sustained personal injury by an accident, arising out of and in the course of his employment with Blue Sky. For this injury, the ALJ awarded benefits, including past medical expenses, temporary total disability (TTD) benefits, and permanent partial impairment of 3%, based on the Sixth Edition of the AMA Guides. The ALJ also ruled that if the Fourth Edition controlled, he would find that Van Horn suffered an 11% impairment of function. The ALJ denied future medical benefits, however, upon finding that Dr. Zimmerman's speculation regarding Van Horn's need for future medical treatment could not overcome the statutory presumption that Blue Sky's duty to provide medical care ended when Van Horn achieved maximum medical improvement.

In April 2020, the Board affirmed the ALJ's compensability determination but reversed the ALJ's decision on future medical treatment benefits and awarded future benefits to Van Horn.

5

Van Horn timely appeals. Blue Sky timely cross-appeals.

ANALYSIS

WHETHER K.S.A. 2020 SUPP. 44-510(b)(23)-(24) ARE FACIALLY UNCONSTITUTIONAL AS A RESULT OF THEIR MANDATED USE OF THE SIXTH EDITION OF THE AMA GUIDES?

Van Horn argues that K.S.A. 2020 Supp. 44-510d(b)(23)-(24)'s use of the Sixth Edition of the AMA Guides is facially unconstitutional because that edition fails to provide an adequate substitute remedy for the right to seek recovery in a common-law tort action. Blue Sky responds that the constitutionality of the provisions is irrelevant because some evidence shows that Van Horn's impairment rating would be the same under both the Fourth and Sixth Editions of the AMA Guides.

*Standard Legal Principles*

A statute's constitutionality is a question of law subject to unlimited review. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015).

The issue before us is whether adopting the Sixth Edition of the AMA Guides resulted in an unconstitutional infringement of the due process rights of workers such as Van Horn. According to our Supreme Court in *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 854, 942 P.2d 591 (1997), the following two-step test should be utilized when determining whether a due process violation exists:

> "'If a remedy protected by due process is abrogated or restricted by the legislature, "such change is constitutional if '[1] the change is reasonably necessary in the public interest to promote the general welfare of the people of the state,' and [2] the legislature provides an adequate substitute remedy" to replace the remedy which has been restricted.'[Citations omitted.]"

6

Van Horn states that the first prong of the inquiry is satisfied and confines his argument solely to the second step of the analysis. However, because Van Horn has failed to sufficiently brief a claim of error under that second step, which would allow for meaningful appellate review, we decline to reach the merits of this issue. The extent of claimant's argument to this court essentially consists of little more than an assertion that the 2011 amendments to the Act were not favorable to workers compensation claimants, followed by a recitation of this court's ruling in *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 427 P.3d 996 (2018), *rev'd* 312 Kan. 597, 478 P.3d 776 (2021), and a request for us to simply find the conclusions discussed by our court in *Johnson* persuasive, then adopt and apply the same in his case.

In *Johnson*, this court reviewed the history of workers compensation legislation, which reflected a gradual erosion of the fair exchange between workers giving up the right to bring a common-law tort action versus workers gaining the right to recover under the Act. It ultimately held that use of the Sixth Edition of the AMA Guides was unconstitutional as applied to Johnson because it provided an inadequate recovery for injured workers within the context of K.S.A. 2015 Supp. 44-510e, a different section than that challenged by Van Horn in this case. Thus, it is not possible for us to simply adopt and apply *Johnson* to Van Horn's case.

Further, as noted above, our Supreme Court reversed our holding in *Johnson.* Specifically, it determined that when this court issued its decision finding the statutory provision deficient, it had overlooked a second criterion set out in the statute for calculating functional impairment, specifically, competent medical evidence. *Johnson*, 312 Kan. 597, Syl. ¶ 2.

Despite our Supreme Court's opinion being issued over seven months after claimant filed his brief and six months prior to our review of his case, Van Horn did not file a letter with this court pursuant to Supreme Court Rule 6.09 (2021 Kan. S. Ct. R. 40)

7

to either acknowledge the decision or advance an argument to establish how his constitutionality claim survived despite this adverse ruling. "'A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point,'" and it is akin to failing to brief an issue. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002). Where a party to an appeal fails to brief an issue, that issue is waived or abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 643, 294 P.3d 287 (2013).

This court recognizes both the similarities and the distinguishing features between the provisions challenged by Van Horn and the one discussed in *Johnson.* However, this court is prohibited from fashioning arguments on behalf of the parties.

> "'Failure to properly state the points relied on indicates a lack of understanding of the appellate function and process. . . . It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for the sometimes expressed unwillingness of an appellate court to assume the role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.'" *Hoskinson v. Heiman*, No. 122,120, 2021 WL 2282688, at *3 (Kan. App. 2021) (unpublished opinion) (quoting *Thummel v. King*, 570 S.W.2d 679, 686 [Mo. 1978]).

Van Horn's failure to adequately brief his constitutionality claim has resulted in an abandonment of that issue.

## WAS THE ALJ'S AWARD SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE?

Van Horn raises a second claim of error and asserts that the ALJ's decision to award benefits based on a 3% impairment rating was not supported by substantial competent evidence. This argument is intertwined with his claim that the mandated use of the Sixth Edition of the Guides is unconstitutional. Essentially, he argues that any rating arising out of the Sixth Edition necessarily lacks the required evidentiary foundation. He requests that we remand his case to the ALJ with instructions to adopt the Fourth Edition of the AMA Guides. Because we were unable to address the merits of his constitutionality claim, we are likewise unable to address this issue and grant the relief requested.

## DID THE ALJ AND THE BOARD ERR IN FINDING THAT VAN HORN SUSTAINED A COMPENSABLE WORK-RELATED INJURY ARISING OUT OF AND IN THE COURSE OF HIS EMPLOYMENT?

In their cross-appeal, Blue Sky argues that the ALJ and the Board erred in finding that Van Horn sustained a compensable work-related injury arising out of and in the course of his employment. Blue Sky asserts that injuries do not arise out of employment if they result from a normal activity of day-to-day living, citing *Johnson v. Johnson County*, 36 Kan. App. 2d 786, 790, 147 P.3d 1091 (2006), as support for that contention. Under their argument, Van Horn ascending a flight of stairs at the time of the incident is properly classified as simply a normal day-to-day activity. In response, Van Horn takes the position that ascending stairs with a 30- to 40-pound tool belt is inherent to his job duties, and because he was injured carrying out work duties, the finding that he sustained a compensable injury should be affirmed.

9

*Standard Legal Principles*

Appellate courts review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 77-621(c)(7). "Substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015). "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review. [Citations omitted.]" *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

Blue Sky argues that the Board's error occurred when it focused on the fact that Van Horn was climbing stairs at the onset of symptoms, rather than asking whether the act of climbing stairs was enough to cause this injury. In support of this contention, Blue Sky directs us to Dr. Samuelson's testimony that the complex tear "likely occurred as a result of weakened, degenerative tissue in the meniscus," and that Van Horn's injury was not connected to any particular and notable twist, fall, or other traumatic injury. Blue Sky contends that this testimony evidences the fact that Van Horn's "alleged work event was nothing more than a triggering or precipitating factor that merely rendered Van Horn's preexisting degenerative condition symptomatic."

Under the Act, employers are liable to pay compensation benefits if "an employee suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment." K.S.A. 2020 Supp. 44-501b(b). Personal injury means "any lesion or change in the physical structure of the body, causing damage or

10

harm thereto." K.S.A. 2020 Supp. 44-508(f)(1). An injury does not arise "out of and in the course of employment" if it was an injury that resulted from the normal activities of day-to-day living. K.S.A. 2020 Supp. 44-508(f)(3)(A)(i). Further, the accident must be the "prevailing factor" of the injury, meaning that employees cannot recover for injuries that are solely aggravations or accelerations of preexisting conditions. K.S.A. 2020 Supp. 44-508(f)(2)(B); *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 949, 379 P.3d 428 (2016).

Blue Sky contends that *Johnson v. Johnson County* provides particularly compelling authority in support of their position. In that case, the claimant injured her left knee when she simultaneously turned in her chair and attempted to stand while reaching for a file that was overhead. The *Johnson* court declined to find there was substantial competent evidence to support the Board's conclusion that the claimant's act of standing up was not merely a normal activity of daily living. In denying compensation, the *Johnson* court cited the well-established rule that when an injury occurs at work, it is not compensable unless it is "'fairly traceable to the employment,'" as contrasted with hazards to which a worker "'would have been equally exposed apart from the employment.'" 36 Kan. App. 2d at 789. In arriving at its conclusion, the *Johnson* court cited *Martin v. U.S.D. No 233*, 5 Kan. App. 2d 298, 615 P.2d 168 (1980), and *Anderson v. Scarlett Auto Interiors*, 31 Kan. App. 2d 5, 61 P.3d 81 (2002).

In *Martin*, this court determined that a claimant did not suffer a compensable back injury when exiting his vehicle upon arrival at work because "almost any everyday activity would have a tendency to aggravate his condition . . . ." 5 Kan. App. 2d at 300. By contrast, the claimant in *Anderson* was deemed to have suffered a compensable back injury from entering a vehicle because his injury followed not only from his personal degenerative conditions, but also from a hazard attendant to his employment. Specifically, he got in and out of automobiles 20 to 30 times a day in the course of his employment with Scarlett Auto Interiors. 31 Kan. App. 2d at 11.

11

The claimants in *Johnson, Martin, and Anderson* all had a medical history specifically related to the injury at issue. The claimant in *Johnson* had a history of three or four incidents of left knee pain. A treating physician testified that years of degeneration and previous problems conveyed that "'it was just a matter of time'" before the claimant injured her knee. 36 Kan. App. 2d at 788. Similarly, Martin's injury was not compensable partly because he had experienced problems with his lower back for the 10 years preceding the injury. *Martin*, 5 Kan. App. at 298. But Anderson's back injury was compensable despite the fact he had received treatment for low back pain as early as 1967 and the injury at issue happened in 1999. *Anderson*, 31 Kan. App. 2d at 6.

Here, Blue Sky does not point to any evidence showing that Van Horn voiced previous complaints about his knee. Dr. Samuelson testified that the nature of the injury showed that Van Horn likely had degenerative tissue before the injury. But nothing in the record suggests that this tissue degeneration caused Van Horn any difficulty. In fact, Dr. Samuelson's report on Van Horn affirmatively states that he had no previous difficulties. Appellate courts determine whether the evidence in support of the Board's decision "has been so undermined by cross-examination or other evidence that it is insufficient to support its decision." *Moore v. Venture Corp.*, 51 Kan. App. 2d 132, 138, 343 P.3d 114 (2015). Here, the record supports, rather than undermines, the Board's decision because Van Horn's lack of prior problems with his knee fortifies his case against any adverse impact by *Johnson*, *Martin*, and even *Anderson*, and it establishes that the stairway accident was the prevailing factor in his injury.

As for Blue Sky's argument that Van Horn's injury did not "arise out of" his employment, Van Horn is like *Anderson* from that perspective, not *Martin*. Martin arrived at work and simply exited his vehicle, a day-to-day activity. Anderson got in and out of customer's vehicles 20 to 30 times a day, making it a function of his job. Here, Van Horn's work required him to repeatedly climb ladders and stairs, with a heavy toolbelt affixed to his waist, while installing satellite dishes and performing service calls for Blue

12

Sky. Van Horn only needed to show that it was more probably true than not that he was climbing the stairs in the course of, or in furtherance of, his duties when he suffered the meniscus tear. See *Johnson v. Stormont Vail Healthcare*, 57 Kan. App. 2d 44, 54, 445 P.3d 1183 (2019), *rev. denied* 311 Kan. 1046 (2020). He satisfied that burden. While Van Horn could climb stairs at home, many activities, while done at home or on a daily basis, can also be job-related activities, such is the case here. See *Netherland v. Midwest Homestead of Olathe Operations*, No. 119,873, 2019 WL 4383374, at *11-12 (Kan. App. 2019) (unpublished opinion) (ruling that walking to clock out and then turning and answering a coworker's question were job-related activities); *Munoz v. Southwest Medical Center*, No. 121,024, 2020 WL 1313794, at *7 (Kan. App. 2020) (unpublished opinion) (ruling that exiting an elevator was a job-related activity).

Substantial competent evidence supports the Board's conclusion that Van Horn's activity, ascending stairs with the added weight of the tool belt, during a service call for Blue Sky, was causally connected to his employment. The Board's decision is affirmed.

DID THE BOARD ERR IN HOLDING THAT VAN HORN WAS ENTITLED TO FUTURE MEDICAL BENEFITS?

Blue Sky also argues that the Board made a factual error when it overruled the ALJ's denial of future medical treatment benefits for Van Horn. Blue Sky asserts that the Board arrived at its conclusion by virtue of a mischaracterization of Dr. Samuelson's opinion and opted to instead rely on, what Blue Sky classifies as, Dr. Zimmerman's unreliable opinion. Following careful review, we conclude the Board's decision to award future medical benefits is supported by substantial competent evidence.

Blue Sky incorrectly argues that the Board construed Dr. Samuelson's testimony as an opinion that Van Horn will never require treatment in the future. Blue Sky notes that, in reality, the doctor asserted that Van Horn will likely need treatment in the future to

13

address degenerative and arthritic changes, however those issues are unrelated to the alleged work injury. Blue Sky argues that this alleged mischaracterization constitutes a fundamental error, which requires this court to overturn the Board's award of future benefits. We are not persuaded by Blue Sky's argument.

The relevant statements from Dr. Samuelson's deposition are as follows:

"Q. Okay. And what was your opinion whether the incident Mr. Van Horn described to you on March 15, 2018 was the prevailing factor in causing any injury you could identify?

"A. Well, he didn't really have an injury, so that the concern is, did his problem develop from just fatigue of degenerative tissue.

. . . .

"A. . . . My statement there was that there was not a specific event or injury that appeared to result in the problem. You know, nothing that would have caused a twisting or traumatic injury to the knee resulting in a tear.

. . . .

"Q. Okay. Specifically you've mentioned a couple times that he didn't have an injury. Can you tell me what you meant by that? You said he didn't have an accident, or he didn't have an injury, or what are you saying?

"A. Well, he didn't have a fall or twisting injury or an impact to his knee. He was just walking.

. . . .

"Q. And what do you suggest if he has pain related to doing bending, stooping or climbing? . . .

14

. . . .

"A. Okay. As far as treatment, my recommended approach is to start with anti-inflammatory pills; work on an exercise program, a conditioning program; you know, work on a weight-loss program, if that's an issue. And then if those things don't help, then injections to the knee can be performed."

Additionally, Dr. Samuelson's report stated the following:

"Due to the fact that there was no specific event or injury, it is my opinion that the incident that occurred could easily have happened while walking at home or with some other nonoccupational activity. Since there was no clear injury or accident that occurred as a result of his work activity, treatment for this degenerative process was appropriately performed under his personal insurance and not his workman's compensation insurance. I cannot state that the simple act of climbing the stairs was the prevailing factor for the degenerative meniscus tear. The aggravation of the knee that may or may not have resulted in a degenerative meniscus tear could easily have occurred at home or some other nonoccupational setting.

"In view of the fact that this does not appear to be a workman's compensation event, I do not feel that there is any permanent partial impairment to the knee. He does not have any restrictions to his knee and there is no reason to consider the need for a permanent restriction.

"*Due to the underlying degenerative changes in the knee*, additional treatment in the future may be necessary, although at this point he should continue to improve if he continues with a home exercise program, anti-inflammatory medications and a weight loss program. Ultimately, the degenerative changes will continue to progress and more aggressive anti-inflammatory treatments, with oral pills and possible injections, can be considered in the future." (Emphasis added.)

The Board's response to Dr. Samuelson's opinion consisted of the following:

15

"Dr. Samuelson did not believe future medical treatment would be required for the work injury, as opposed to treatment for preexisting degenerative arthritis. . . .

. . . .

"Dr. Samuelson's opinion that no treatment will ever be needed in the future is rejected. Part of Dr. Samuelson's opinion is based on Van Horn not even having sustained a work injury, a premise the Board rejects."

The Board fairly summarized Dr. Samuelson's opinion as being that "no treatment will ever be needed in the future" *in connection with the work injury*. Like Dr. Zimmerman, Dr. Samuelson agreed that Van Horn will need future treatment, but he attributed future treatment to degenerative changes rather than the work injury. The language in the Board's decision does not support Blue Sky's contention that the Board mischaracterized or misunderstood Dr. Samuelson's opinion.

Blue Sky also attacks Dr. Zimmerman's opinion as "difficult to take seriously" and a "copy/paste methodology" insufficient to meet Van Horn's burden under K.S.A. 2020 Supp. 44-510h(e). The relevant language from that provision states as follows:

"It is presumed that the employer's obligation to provide the services of a healthcare provider . . . shall terminate upon the employee reaching maximum medical improvement. Such presumption may be overcome with medical evidence that it is more probably true than not that additional medical treatment will be necessary after such time as the employee reaches maximum medical improvement."

Blue Sky asks this court to rule that Dr. Zimmerman's testimony did not overcome the statutory presumption because, essentially, Dr. Zimmerman's opinion is not credible. Blue Sky's argument fails for two reasons. First, this court does not reweigh the evidence or evaluate the credibility of witnesses. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514-15, 154 P.3d 494 (2007). Second, Dr. Samuelson also agreed that it is more probably

16

true than not that additional medical treatment will be necessary in the future, although he does not attribute that need for treatment to the work injury. But, again, that is because he does not believe that Van Horn's knee injury stems from a work-related incident. Thus, in truth, both physicians considered it more likely true than not that Van Horn will need further treatment. It was properly determined that Van Horn sustained a work-related injury, which allowed the Board to credit Dr. Zimmerman's opinion that the work injury connects causally to the future medical treatment.

## DID THE APPEALS BOARD ERR IN ITS AWARD OF TEMPORARY TOTAL DISABILITY BENEFITS?

Blue Sky advances the added argument that the Board erred in awarding Van Horn temporary total disability (TTD) benefits. This argument also arises out of their contention that Van Horn did not suffer a compensable injury. Blue Sky concedes that, if Van Horn's injury is seen as compensable, then he is entitled to $595.74 per week from March 15, 2018, until June 21, 2018, which is $8,425.87 in total.

Because we have already concluded that the Board properly determined Van Horn suffered a compensable, work-related injury, it is unnecessary to delve into the merits of this argument. The Board properly awarded TTD benefits to Van Horn.

## DID THE APPEALS BOARD ERR IN AWARDING PAST MEDICAL BENEFITS?

In its final claim of error, Blue Sky argues that the medical bills submitted by Van Horn constitute unauthorized treatment and therefore recovery should be limited to $500, per K.S.A. 2020 Supp. 44-510h(b)(2). Blue Sky also contends that several entries in the medical bills relate to injuries and treatments other than the knee injury. Van Horn responds that Blue Sky is liable for expenses under K.S.A. 2020 Supp. 44-510j(h) because Blue Sky knew about the injury and refused or neglected to reasonably provide

the services of a health care provider. Following careful review, we conclude the Board properly awarded past medical benefits and affirm that decision.

K.S.A. 2020 Supp. 44-510h(a) states:

"It shall be the duty of the employer to provide the services of a health care provider, and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches, apparatus and transportation to and from the home of the injured employee to a place outside the community in which such employee resides, and within such community if the director, in the director's discretion, so orders, including transportation expenses computed in accordance with subsection (a) of K.S.A. 44-515 and amendments thereto, as may be reasonably necessary to cure and relieve the employee from the effects of the injury."

K.S.A. 2020 Supp. 44-510h(b)(2) states:

"Without application or approval, an employee may consult a health care provider of the employee's choice for the purpose of examination, diagnosis or treatment, but the employer shall only be liable for the fees and charges of such health care provider up to a total amount of $500. The amount allowed for such examination, diagnosis or treatment shall not be used to obtain a functional impairment rating. Any medical opinion obtained in violation of this prohibition shall not be admissible in any claim proceedings under the workers compensation act."

K.S.A. 2020 Supp. 44-510j(h) states, in part:

"If the employer has knowledge of the injury and refuses or neglects to reasonably provide the services of a health care provider required by this act, the employee may provide the same for such employee, and the employer shall be liable for such expenses subject to the regulations adopted by the director."

First, K.S.A. 2020 Supp. 44-510h(a) gives the employer a duty to provide health care services. Then, K.S.A. 2020 Supp. 44-510j(h) provides the employee with a remedy if the employer fails to carry out that duty. Van Horn contacted Blue Sky immediately from the client's home shortly after his injury occurred, and Blue Sky directed him to go to urgent care. Blue Sky does not assert it was unaware of Van Horn's injury.

Instead, Blue Sky argues, without citation, that Van Horn should have applied for a preliminary hearing under K.S.A. 2020 Supp. 44-534a to seek an order for authorization of treatment. Blue Sky contends that because Van Horn did not apply for such a hearing, this court should treat his expenses as unauthorized expenses under K.S.A. 2020 Supp. 44-510h(b)(2).

The controlling precedent on this issue was set forth by our Supreme Court in *Saylor v. Westar Energy, Inc*., 292 Kan. 610, 256 P.3d 828 (2011). In that case, Saylor had knee replacement surgery and then served a notice of intent and written claim on Westar. Westar argued that it should not be required to pay all of Saylor's medical bills because it did not authorize Saylor's treatment. Westar argued, as Blue Sky does here, that if an employee wants benefits that the employer has not voluntarily provided, then the worker must adhere to the procedures set forth under K.S.A. 44-534a(a). The *Saylor* court rejected this argument and stated the following: "[T]he statute clearly conveys the message that if Westar knew that its employee was suffering from a work-related injury and refused or neglected to provide medical services to address that injury, the employee was permitted to provide his or her own doctor at Westar's expense." 292 Kan. at 623.

Here, Blue Sky would presumably assert that it knew of the injury, it simply did not believe it to be work-related, making its case distinguishable from *Saylor*. But Blue Sky does not cite *Saylor* to argue a different result. Nor does Blue Sky cite any other caselaw to support the idea that an injured employee is required to wait until an ALJ has ordered authorization of treatment before he or she may seek treatment for an injury.

19

Failure to support a point with pertinent authority is akin to failing to brief an issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Furthermore, the record shows that Van Horn did in fact apply for a preliminary hearing. Twice. Van Horn called Blue Sky immediately following his injury on March 15, 2018, and Blue Sky directed him to go to urgent care. On April 4, Van Horn's attorney sent Blue Sky the notice required before applying for a preliminary hearing and on May 1, Van Horn underwent knee surgery. On May 7, Van Horn submitted the requisite form to the Division of Workers Compensation in order to apply for a preliminary hearing under K.S.A. 44-534a. Van Horn filed a second such form over one month later, on June 19.

Van Horn already waited a month and a half for his knee surgery. Blue Sky cites no authority to support the contention that K.S.A. 2020 Supp. 44-510h(b)(2) required him to wait even longer, i.e., until an ALJ ordered authorization of treatment, to avoid the $500 cap on unauthorized expenses. Blue Sky refused or neglected to provide health care services as contemplated by K.S.A. 2020 Supp. 510j(h). As such, the Board's decision to award past medical benefits is affirmed.

Affirmed.